## LISA MACOMBER ET AL. *v.* TRAVELERS PROPERTY AND CASUALTY CORPORATION ET AL.
### (SC 17440)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued December 1, 2005—officially released April 4, 2006

*Thomas J. Groark, Jr.*, and *John A. Neuwirth*, pro hac vice, with whom were *Michael Shea, James K. Robertson, Jr.*, and, on the brief, *Jonathan Margolis*, pro hac vice, and *Adam Schloss*, pro hac vice, for the appellants (defendants).

*Ralph M. Stone*, pro hac vice, with whom were *John C. Matulis, Jr.*, and *Thomas G. Ciarlone, Jr.*, pro hac vice, for the appellee (named plaintiff).

*Katherine A. Scanlon* and *Peter J. Vodola* filed a brief for the Connecticut Business and Industry Association, Inc., et al. as amici curiae.

*Opinion*

BORDEN, J. The defendants, Travelers Group, Inc., Travelers Property and Casualty Corporation (Travelers Casualty), Travelers Equity Sales, Inc., Travelers Life

and Annuity Company, and Solomon Smith Barney Holdings, Inc. (Smith Barney), appeal from the ruling of the trial court, certifying the claims alleged in four counts of the complaint as a class action and certifying the named plaintiff, Lisa Macomber, as the representative of the class.[1] The defendants claim that the trial court abused its discretion in: (1) certifying the case as a class action because individual issues of law and fact overwhelm any issues common to the class; (2) certifying the plaintiff's claims as typical of absent class members and certifying her as an adequate class representative; and (3) ruling that a class action is superior to other methods of adjudication. We agree with certain parts of the defendants' first and second claims, and, accordingly, we reverse the class certification ruling.[2]

In 1999, Macomber and Kathryn Huaman sued the defendants in an initial complaint consisting of ten substantive counts. After the trial court, *Aurigemma, J.,* struck the entire complaint for failure to allege a legally cognizable injury, the plaintiff appealed to this court. We reversed as to six of the ten counts. See *Macomber* v. *Travelers Property & Casualty Corp.,* 261 Conn. 620, 653, 804 A.2d 180 (2002). Upon the remand, the plaintiff

---

[1] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Because one of the certified counts alleges violations of the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; because the nonCUTPA counts are inextricably intertwined with the CUTPA count, and because our analysis of the court's certification order applies to all of the certified counts, the trial court's ruling qualifies as a final judgment for purposes of appeal. See *Collins* v. *Anthem Health Plans, Inc.,* 266 Conn. 12, 28–30, 836 A.2d 1124 (2003).

Kathryn Huaman, the custodian for Joshua Adickes, was also a plaintiff in the initial action. Huaman has since withdrawn. Hereafter, we refer to Macomber in this case as the plaintiff. We refer to the plaintiffs in the prior action collectively as the plaintiffs, and individually by name.

[2] This conclusion renders it unnecessary to consider the defendants' third claim on appeal.

moved for class certification. After limited discovery and an evidentiary hearing, the trial court, *Peck, J.,* granted class certification as to four of the remaining counts, namely, count three (breach of contract), counts four (CUTPA)[3] and five (Connecticut Unfair Insurance Practices Act [CUIPA]),[4] which were merged into one count, count eight (civil conspiracy), and count ten (unjust enrichment). It is undisputed, however, that the factual allegations underlying all of the counts are inextricably intertwined and, with certain minor exceptions, are essentially the same. This appeal followed.

As noted previously, this is the second time that this court has considered this case. In the first case, the plaintiffs included Macomber and Huaman. Id., 622. In general terms, the complaint alleged that the defendants, in utilizing structured settlements to resolve various types of personal injury claims, had engaged routinely in two types of wrongdoing: a rebating scheme; and a shortchanging scheme. Id., 625. The rebating scheme was based on the fact that, when the annuities underlying the structured settlements were purchased by Travelers Casualty through brokers, the brokers would rebate a portion of their commissions to Travelers Casualty. The shortchanging scheme was based on the fact that Travelers Casualty, by virtue of the rebating and other arrangements, would spend less on the annuities than the amounts called for in its agreements with the claimants. Id.

Macomber alleged that she had entered a structured settlement in 1990 with Travelers Casualty that was part of the rebating scheme based on undisclosed rebates paid in connection with the annuity used to fund the structured settlement. Huaman alleged that in 1994 she had entered a structured settlement with

---

[3] See footnote 1 of this opinion.

[4] General Statutes § 38a-815 et seq.

Travelers Casualty that was part of the shortchanging scheme based on an annuity purchased through the defendant Smith Barney. With specific reference to Smith Barney, the complaint alleged that in January, 1994, Travelers Casualty had entered into an exclusive arrangement with Smith Barney, whereby Travelers Casualty would purchase all annuities through a subsidiary of Smith Barney, and whereby commissions on the annuities would be rebated to Travelers Casualty. Subsequently, the complaint alleged, Smith Barney merged with and became a subsidiary of Travelers Group, Inc.

In that case, we considered whether the plaintiffs had alleged any legally cognizable damages, in the face of the defendants' contentions that the plaintiffs, who had entered into structured settlements, had received the precise income stream for which they had bargained. See id., 628. We held that, broadly construed, the plaintiffs' complaint alleged legally cognizable damages because it would permit proof that the defendants had represented to the plaintiffs the costs of their annuities, that the true costs were less than had been represented, and "that, had the true facts been as the defendants represented them to be, the plaintiffs would have been able to negotiate structured settlements that: (1) cost *and* were therefore *worth*, more than were in fact negotiated; and (2) would have produced income streams greater than were in fact negotiated. In addition, the complaint would also permit proof that, as a result of the defendants' alleged misrepresentation of both the cost and value of the structured settlements, the plaintiffs paid their attorneys more than they would have, had they known the true cost and value of their annuities." (Emphasis in original.) Id., 629–30. Further, we noted that, "[c]ritical to [the plaintiffs'] theory of harm, under either the rebating or short-changing scheme, is their allegation that the 'present value' of each of their

annuities was represented to be the same as the 'cost' of the annuity." Id., 632.

We also noted that the plaintiffs had alleged that Travelers Casualty had breached its promise to purchase an annuity for a certain amount and that, by accepting the commission rebates, it had "failed to do as promised." Id., 635. Specifically, we stated that the "key to the plaintiffs' argument is that, once Travelers Casualty made a representation as to how much the annuity would cost for it to purchase, Travelers Casualty had a duty to disclose any rebates or other schemes that would reduce the final cost of the annuity to Travelers Casualty." Id.

In this connection, we emphasized that "[a] failure to disclose can be deceptive only if, in light of all the circumstances, there is a duty to disclose. . . . *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 180, 757 A.2d 14 (2000). Regarding the duty to disclose, the general rule is that . . . silence . . . cannot give rise to an action . . . to set aside the transaction as fraudulent. Certainly this is true as to all facts which are open to discovery upon reasonable inquiry. . . . *Duksa* v. *Middletown*, 173 Conn. 124, 127, 376 A.2d 1099 (1977). A duty to disclose will be imposed, however, on a party insofar as he voluntarily makes disclosure. A party who assumes to speak must make a full and fair disclosure as to the matters about which he assumes to speak. . . . Id. Based on the plaintiffs' allegations that Travelers Casualty made affirmative misrepresentations as to the cost of the annuities, we conclude[d] that, whether Travelers Casualty had a duty to disclose its agreements with various annuity brokers so that the plaintiffs could make an informed decision regarding whether to accept Travelers Casualty's annuity offer, and if so, whether it violated that duty, are questions of mixed fact and law that would require a more detailed factual matrix than is disclosed by the

plaintiffs' allegations. Because such a factual basis is not present, these questions cannot be answered satisfactorily on this motion to strike. Although we agree with the trial court that, as a general proposition, an insurer has no duty to disclose its actual cost in purchasing an annuity, in this case, given the plaintiffs' allegations, such a duty may have arisen. Suffice it to say that the allegations are sufficient to withstand the defendants' motion to strike." (Internal quotation marks omitted.) *Macomber* v. *Travelers Property & Casualty Corp.*, supra, 261 Conn. 635–36. Thus, critical to the plaintiffs' theory of recovery on all of the claims was proof of certain representations as to the value and cost of the annuities that imposed a duty on Travelers Casualty to make full disclosure of those values and costs by disclosing the rebating and shortchanging schemes.

Applying this analysis to the complaint, we then concluded that the plaintiffs had alleged cognizable harms as to the following counts of the complaint: count three, for breach of contract; id., 642; count four for violation of CUTPA; id., 642–44; count five for CUIPA as a form of a CUTPA violation;[5] id., 645; count six for common-law fraud; id., 645–46; count seven for negligent misrepresentation; id.; count eight for civil conspiracy; id., 647–48; and count ten for unjust enrichment.[6] Id., 649–51. Accordingly, we reversed the judgment in part, and remanded the case for further proceedings as to those remaining counts. Id., 653.

Following our remand, Huaman withdrew her claims, leaving Macomber as the sole plaintiff. The plaintiff then moved for class certification, proposing the following class: "all persons who [since 1982] settled claims with

[5] In its class certification order, the trial court has merged counts four and five into one count for CUTPA violations.

[6] The allegations supporting the unjust enrichment claim rely solely on the underlying wrongful conduct alleged in the other substantive counts.

[Travelers Casualty] insureds through structured settlements" that involved rebated commissions on the annuities used to fund the settlements, "and/or . . . as to which [Travelers Casualty] spent amounts less than the sums it represented as the costs or then-present values of the annuities used to fund the structured settlements." The plaintiff also requested that she be certified "as the representative of the class that she seeks to represent." It is undisputed that the proposed class consists of thousands of potential class members, who have entered their structured settlements in various states throughout the nation.[7] After limited discovery and an evidentiary hearing, the court granted the plaintiff's motion for class certification as to four of the counts: (1) breach of contract; (2) CUTPA[8] and CUIPA; (3) civil conspiracy; and (4) unjust enrichment.

Before addressing the defendants' claims on appeal, however, we note that the trial court employed a truncated discovery process regarding the motion for class certification, which has complicated our appellate review of its ruling. Apparently, there was a dispute over the amount of discovery to be had on the motion for class certification. The trial court stated in its memorandum of decision: "In an attempt to accommodate the plaintiff's request for class discovery and the defendants' concerns about the potential production of thousands of claim files, the court randomly selected twenty-

---

[7] There was evidence, credited by the trial court, that Travelers Casualty enters into approximately 2000 structured settlements per year.

[8] We note that General Statutes § 42-110g (b) provides: "Persons entitled to bring an action under subsection (a) of this section may, pursuant to rules established by the judges of the Superior Court, bring a class action on behalf of themselves and other persons similarly situated who are residents of this state or injured in this state to recover damages." It is possible that this provision bars a national class action for CUTPA violations, such as this case. The defendants have not distinctly raised this claim, however, except by a brief footnote reference, and the parties have not briefed it. We therefore do not consider it.

eight sample files, in addition to those of Macomber and Huaman, for review. These were eventually entered as" exhibits in the class certification proceeding. The trial court stated further: "All of them were admittedly culled by the defendants to include only the documents pertinent to the motion for class certification." We were informed at oral argument before this court that the parties agreed to this procedure. There was no agreement, however, and the record does not establish, that the thirty files submitted to the court were materially representative of the thousands of files in which Travelers Casualty had entered into structured settlements in the years in question. Although we understand the trial court's desire to accommodate both sides' concerns in this way, and although frequently such an accommodation will promote an efficient resolution of the matter in dispute, we cannot endorse this procedure on a motion for class certification in a case such as this.

First, it is difficult to assume that a sampling of thirty files out of what could be tens of thousands can, under any circumstances, be considered representative as to the essentials of the class certification question, absent, at least, a concession by the defendants that they are representative. We can find no such concession in this record.

Second, as we discuss in part III of this opinion, the court relied on the lack of discovery in determining important issues on the question of class certification. In addition, at various points in their briefs, both the plaintiff and the defendants have attempted to take advantage of the lack of the record resulting from this procedure; the plaintiff relying on the need for further discovery to establish what the defendants claimed was necessary for class certification; and the defendants arguing that the record did not establish those requisites. The parties should not have agreed to a procedure that truncated the trial record and then, for tactical

reasons, relied on that truncation as support for their respective positions to the alleged detriment of the other party. Indeed, as we discuss more fully in part III of this opinion, the court should not have agreed to such a procedure and then relied on that truncation as support for failing to hold the plaintiff to her proper burden on the issue of class certification.

Nonetheless, we are presented with the question of whether, on the basis of the record produced in the trial court, the court's ruling on the class certification was an abuse of discretion. We therefore proceed to the defendants' claims on appeal on the basis of that record, mindful, however, that presumptions arising from the lack of discovery cannot fill any gaps that might otherwise exist.

I

We first set forth the standard of review governing class certification orders. "A trial court must undertake a rigorous analysis to determine whether the plaintiffs have borne the burden of demonstrating that the class certification requirements of Practice Book §§ 9-7 and 9-8 have been met. . . . *Collins* v. *Anthem Health Plans, Inc.*, [266 Conn. 12, 23, 836 A.2d 1124 (2003)]. A trial court nonetheless has broad discretion in determining whether a suit should proceed as a class action. . . . Id. As long as the trial court has applied the proper legal standards in deciding whether to certify a class, its decision may . . . be overturned [only] if it constitutes an abuse of discretion. . . . *In re Visa Check/ Mastermoney Antitrust Litigation*, 280 F.3d 124, 132 (2d Cir. 2001), cert. denied, 536 U.S. 917, 122 S. Ct. 2382, 153 L. Ed. 2d 201 (2002).

"[I]n determining whether to certify the class, a [trial] court is bound to take the substantive allegations of the complaint as true. . . . *Collins* v. *Anthem Health Plans, Inc.*, supra, 266 Conn. 24. That does not mean,

however, that a court is limited to the pleadings when determining whether the requirements for class certification have been met. On the contrary, we stated in *Collins* that [t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the [plaintiffs'] cause of action . . . and that it [sometimes] may be necessary for the court to probe behind the pleadings before coming to rest on the certification question. . . . Id. In determining the propriety of a class action, [however] the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [the class action rules] are met. . . . Id., 24–25. Although no party has a right to proceed via the class mechanism . . . doubts regarding the propriety of class certification should be resolved in favor of certification. . . . *Rivera* v. *Veterans Memorial Medical Center*, 262 Conn. 730, 743, 818 A.2d 731 (2003).

"The rules of practice set forth a two step process for trial courts to follow in determining whether an action or claim qualifies for class action status. First, a court must ascertain whether the four prerequisites to a class action, as specified in Practice Book § 9-7, are satisfied. These prerequisites are: (1) numerosity—that the class is too numerous to make joinder of all members feasible; (2) commonality—that the members have similar claims of law and fact; (3) typicality—that the [representative] plaintiffs' claims are typical of the claims of the class; and (4) adequacy of representation—that the interests of the class are protected adequately. Id., 738, citing Practice Book § 9-7; accord *Collins* v. *Anthem Health Plans, Inc.*, supra, 266 Conn. 33.

"Second, if the foregoing criteria are satisfied, the court then must evaluate whether the certification requirements of Practice Book § 9-8 are satisfied. These

requirements are: (1) predominance—that questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) superiority—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Practice Book § 9-8. Because our class certification requirements are similar to those embodied in rule 23 of the Federal Rules of Civil Procedure, and our jurisprudence governing class actions is relatively undeveloped, we look to federal case law for guidance in construing the provisions of Practice Book §§ 9-7 and 9-8. See *Collins* v. *Anthem Health Plans, Inc.*, supra, 266 Conn. 32." (Citation omitted; internal quotation marks omitted.) *Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 320–23, 880 A.2d 106 (2005). Finally, we give greater deference to a trial court's decision to certify a class than to its decision declining to do so. See *Collins* v. *Anthem Health Plans, Inc.*, supra, 266 Conn. 23–24. With this background in mind, we turn to the defendants' claims.

II

We first consider the defendants' second set of claims, which focuses on the typicality and adequacy of the plaintiff as a class representative. We do so because we conclude that the defendants are correct in one part of those contentions and, therefore, depending on what happens following our remand, our conclusion in that regard may or may not be dispositive of the class certification issue.

The defendants claim that the trial court abused its discretion in ruling that the plaintiff's claims are typical of absent class members and that she is an adequate class representative. Specifically, they contend that: (1) she cannot represent the shortchanging class because she has alleged only that she is the victim of the rebating scheme; (2) she is subject to a defense of the statute

of limitations that renders her atypical and inadequate; and (3) she cannot represent the class against Smith Barney because she has no claim against it. We disagree with the first two contentions on the basis of our scope of review of the court's exercise of discretion, and agree with the third contention.

As to the first contention, namely, that the plaintiff alleged harm to her only by virtue of the rebating scheme, we note that the trial court interpreted her deposition testimony to mean that she had been a victim of both schemes. Furthermore, the trial court noted that rebating is a form of shortchanging, because both render the cost to Travelers Casualty of the annuities less than represented. Given our very deferential scope of review of a trial court's exercise of discretion in favor of class certification, and that we resolve doubtful cases in favor of certification, we cannot say that the trial court abused its discretion in ruling as it did. See *Collins* v. *Anthem Health Plans, Inc.*, supra, Conn. 320–23; *Collins* v. *Anthem Health Plans, Inc.*, supra, 266 Conn. 23–24.

The same may be said for the defendants' second contention, regarding the potential vulnerability of the plaintiff to the statute of limitations. There is no doubt that, because the plaintiff entered her structured settlement in 1990, and brought this action in 1999, she would be vulnerable to a statute of limitations defense, to which she has affirmatively pleaded equitable tolling by fraudulent concealment. There is also no doubt that she will have a heavy burden to establish her claim of equitable tolling, at least under Connecticut law. See, e.g., *Bound Brook Assn.* v. *Norwalk*, 198 Conn. 660, 665–66, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986).

"While it is settled that the mere existence of individualized factual questions with respect to the class repre-

sentative's claim will not bar class certification, see, e.g., *Green* [v. *Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S. Ct. 2131, 23 L. Ed. 2d 766 (1969)]; *Dura-Bilt Corp.* v. *Chase Manhattan Corp.*, 89 F.R.D. 87, 98–99 (S.D.N.Y. 1981), class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, see, e.g., *Kline* v. *Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981) (Weinfeld, J.), aff'd in relevant part, 702 F.2d 400, 403 (2d Cir. 1983); *J.H. Cohn & Co.* v. *American Appraisal [Associates], Inc.*, 628 F.2d 994, 998–99 (7th Cir. 1980). Regardless of whether the issue is framed in terms of the typicality of the representative's claims . . . or the adequacy of its representation . . . there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it. 7A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure [(2d Ed. 1986) § 1764, pp. 259–60] (typicality); 3B J. Moore & J. Kennedy, Moore's Federal Practice [(2d Ed. 1987) ¶ 23.07[1], p. 23-192] (adequacy of representation).

"While the fact that [Macomber] was the only plaintiff to come forward and seek to represent the class weighs in favor of certification, see *Green* [v. *Wolf Corp.*, supra, 406 F.2d 298]; [*Dura-Bilt Corp.* v. *Chase Manhattan Corp.*, supra, 89 F.R.D. 101], a class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of [the certification rule] have been satisfied, *General [Telephone Co. of the Southwest]* v. *Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982)." (Internal quotation marks omitted.) *Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990); *Baffe* v. *Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 59–60 (2d Cir. 2000). Furthermore, generally a plaintiff whose claim is time barred may not represent the class. See, e.g., *Piazza* v. *EBSCO Indus-*

*tries, Inc.*, 273 F.3d 1341, 1349 (11th Cir. 2001) (class certification reversed because plaintiff's claim against defendant was time barred; therefore, District Court abused its discretion in finding plaintiff to be adequate class representative); *Carter* v. *West Publishing Co.*, 225 F.3d 1258, 1263 (11th Cir. 2000) ("Inherent in [r]ule 23 [of the Rules of Civil Procedure] is the requirement that the class representatives be members of the class. . . . Here, [the class representative] is not and cannot be a class member because his claim is time barred; consequently, he cannot represent the class." [Internal quotation marks omitted.]), quoting *Great Rivers Cooperative of Southeastern Iowa* v. *Farmland Industries, Inc.*, 120 F.3d 893, 899 (8th Cir. 1997); *Weinberger* v. *Retail Credit Co.*, 498 F.2d 552, 556 (4th Cir. 1974) ("being barred from suit himself, [the plaintiff] is not a member of the class he seeks to represent"); *Mason* v. *Anheuser-Busch, Inc.*, 579 F. Sup. 871, 873 and n.1 (E.D. Mo. 1984) (because plaintiff's action was barred by statute of limitations he was precluded from being member of class of similarly situated persons he sought to represent).

The trial court reasoned, however, that "even if some of the specific legal theories promulgated in the complaint are barred as to [the plaintiff], she and the others still would share the same core grievance, a claimed violation of a duty by Travelers Casualty to disclose that it received rebates on commissions and/or the actual costs of the annuities it purchased in the settlement of class members' underlying claims. Given the class period proposed, many, if not all, potential class members are also likely to have statute of limitations issues similar to those of [the plaintiff]."

Thus, although there is considerable weight to the defendants' contention that the plaintiff's focus on defeating the statute of limitations defense may threaten the rest of the litigation, to the detriment of

the absent class members whose claims are not time barred, we cannot say that the trial court abused its discretion in rejecting this claim. Although the statute of limitations defense undoubtedly will be asserted against the plaintiff, it will also apply to many, but certainly not all, of the absent class members. Thus, it cannot be considered a defense unique to the plaintiff. We recognize that this issue is a close call. As noted previously, however, we resolve such calls in favor of certification.

The defendant also claims that the trial court abused its discretion in certifying the plaintiff as a class representative because she has not asserted, and cannot assert, a viable claim against one of the defendants, namely, Smith Barney. We agree with this contention.

It is well established that a representative plaintiff must have individual standing to assert claims against all the members of a defendant class. See, e.g., *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40 n.20, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976) ("[t]hat a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent" [internal quotation marks omitted]), quoting *Warth v. Seldin*, 422 U.S. 490, 502, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970) ("A plaintiff who is unable to secure standing for himself is certainly not in a position to fairly insure the adequate representation of those alleged to be similarly situated. . . . In short, a predicate to [the plaintiff's] right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class." [Citation omitted; internal quota-

tion marks omitted.]), cert. denied, 401 U.S. 974, 91 S. Ct. 1190, 28 L. Ed. 2d 323 (1971); *Ramos* v. *Patrician Equities Corp.*, 765 F. Sup. 1196, 1199 (S.D.N.Y. 1991) ("[a] plaintiff, including one who is seeking to act as class representative, must have individual standing to assert the claims in the complaint against each defendant being sued by him"); *Akerman* v. *Oryx Communications, Inc.*, 609 F. Sup. 363, 376 (S.D.N.Y. 1984) ("Membership in a plaintiff class is similarly insufficient to mitigate a lack of individual standing. The fact that plaintiffs seek certification as representatives of a class at least one of whose members most probably will have purchased from each of the proposed [defendants] in no way alters the fundamental requirement that each plaintiff have standing to sue each defendant."); *Weiner* v. *Bank of King of Prussia*, 358 F. Sup. 684, 695 (E.D. Pa. 1973) ("The plaintiff's standing to bring an action against each defendant named in the [c]omplaint must be established independently of Federal Rule of Civil Procedure 23. Only then is the plaintiff in a position to represent others having similar claims against those same defendants."); *Angel Music, Inc.* v. *ABC Sports, Inc.*, 112 F.R.D. 70, 73 (S.D.N.Y. 1986) ("the plaintiff must establish his personal standing to sue each defendant before attempting to satisfy the requirements of class certification set out by [r]ule 23").

The previously mentioned holdings are the necessary consequence of the notion "that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class. As noted [previously], typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class.

"As the Supreme Court has explained, [w]e have repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members. [*General Telephone Co. of the Southwest* v. *Falcon,* supra, 457 U.S. 156] . . . see also *Blum* v. *Yaretsky,* 457 U.S. 991, 999, 102 S. Ct. 2777, 2783, 73 L. Ed. 2d 534 (1982) ([E]xplaining that [i]t is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.). This rule makes especially good sense when we consider that one of the core purposes of conducting typicality review is to ensure that the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. *Baby Neal* [v. *Casey,* 43 F.3d 48, 57 (3d Cir. 1994)]; see also 1 [H.] Newberg & [A.] Conte, Newberg on Class Actions, [(3d Ed. 1992) § 3.13]." (Citation omitted; internal quotation marks omitted.) *Prado-Steiman* v. *Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000).

The plaintiff entered her structured settlement in 1990. By her own allegations, Smith Barney did not enter either the rebating or shortchanging scheme until 1994. The plaintiff can have no standing to assert a claim against Smith Barney and, therefore, cannot be a typical class representative, because she cannot typically and adequately represent those class members with such claims. Put another way, she has no incentive aggressively to litigate any claims against Smith Barney and, therefore, is not an appropriate class representative.

The plaintiff does not challenge the notion that, in order for the plaintiff to be an adequate and typical class representative, she must be able to assert a claim against all defendants, including Smith Barney. The plaintiff asserts, instead, that she has asserted such a claim by virtue of her allegations of civil conspiracy. She argues that, although Smith Barney's wrongful conduct did not begin until 1994, her complaint alleges "that there was a civil conspiracy, and even late-comers to a conspiracy may be held liable for the harm caused by the conspiracy." In support of this thesis, the plaintiff cites two cases, namely, *State* v. *McLaughlin*, 132 Conn. 325, 333, 44 A.2d 116 (1945), and *State* v. *Conde*, 67 Conn. App. 474, 497–98 n.13, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002), for the proposition that " '[o]ne who comes into a conspiracy after it has been formed, with knowledge of its existence and with a purpose of forwarding its designs, is as guilty as though he had participated in its original formation.' " We disagree with the plaintiff's analysis.

First, both *Conde* and *McLaughlin* are criminal cases and are distinguishable from the present case. The language cited in the plaintiff's brief stands for the unsurprising proposition that a coconspirator need not have been one of the original conspirators to be criminally liable for the crime of conspiracy, so long as he intentionally participated "in the transaction or some portion of it with a view to the furtherance of a common criminal purpose or design." *State* v. *McLaughlin*, supra, 132 Conn. 333. That does not mean, as the plaintiff suggests, that a civil defendant against whom a civil conspiracy is alleged may be held civilly liable in damages for conduct engaged in and harm caused long before the defendant joined the conspiracy.

"The [elements] of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by

criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." (Internal quotation marks omitted.) *Harp* v. *King*, 266 Conn. 747, 779, 835 A.2d 953 (2003). There is, however, "no independent claim of civil conspiracy. Rather, [t]he action is for damages caused *by acts committed pursuant to a formed conspiracy* rather than by the conspiracy itself. . . . Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 779 n.37. "[T]he essence of a civil conspiracy . . . [is] two or more persons acting together to achieve a shared goal that results in injury to another." Id., 779.

Thus, the purpose of a civil conspiracy claim is to impose civil liability for damages on those who agree to join in a tortfeasor's conduct and, thereby, become liable for the ensuing damage, simply by virtue of their agreement to engage in the wrongdoing. Implicit in this purpose, and in the principle that there must be an underlying tort for the viability of a civil conspiracy claim, is the notion that the coconspirator be liable for the damages flowing from the underlying tortious conduct to which the coconspirator agreed. This reasoning, however, does not extend so as to impose civil liability on a coconspirator for damage caused by the actual wrongdoer before the civil coconspirator even joined the conspiracy. By that time, the underlying tort had already been completed. The purpose of civil liability is to allocate the loss between persons who may be in some legal sense responsible for that loss. We can see no reason to extend that purpose to a defendant who could not have been in any sense responsible for a loss because it had not begun to participate in the civil conspiracy resulting in that loss until long after

the loss was incurred. Indeed, the plaintiff cites no case holding a civil conspirator liable for such preexisting conduct and damages. Accordingly, the plaintiff's allegations of civil conspiracy cannot act as a surrogate for the plaintiff's lack of standing to sue Smith Barney.

The plaintiff also claims that "it is noteworthy that [Smith Barney] and other Travelers entities are simply shifting subsidiaries which engaged in the wrongful conduct over time, and the fact that the rebating broker at the time of [the] plaintiff's transaction was [Travelers Equities Sales, Inc.] does not absolve [Smith Barney] of responsibility, where [Smith Barney] is a successor to [Travelers Equities Sales, Inc.'s] interest in the structured settlement rebating practice." We disagree with this characterization.

The short answer to it is that the allegations of the complaint simply do not support it. There is no allegation, either explicit or implicit, that Smith Barney succeeded to Travelers Equities Sales, Inc.'s interest in the rebating scheme, by acquisition, merger or some other legally cognizable method. All of the allegations regarding the two entities are to the effect that, beginning in 1994, Smith Barney, as a company then outside the Travelers family of companies, entered into an exclusive arrangement with Travelers Casualty to broker annuities through a wholly owned subsidiary of Smith Barney, namely, SBHU Life Agency of Ohio, Inc.; that Smith Barney would then rebate commissions to Travelers Casualty; that at some subsequent time Smith Barney merged with Travelers Group, Inc., and became, along with Travelers Equities Sales, Inc., and other Travelers entities, a wholly owned subsidiary of Travelers Group, Inc.; and that Smith Barney continued to participate in the rebating and shortchanging schemes. There is no suggestion in these allegations that Smith Barney, by subsequently merging with and becoming a subsidiary of Travelers Group, Inc., along with Travelers Equi-

ties Sales, Inc., thereby succeeded to Travelers Equities Sales, Inc.'s interest in the alleged schemes.

Finally, the plaintiff suggests that "discovery has not yet proved [the] defendants' claim that [the] plaintiff's transaction did not include conduct by [Smith Barney]." This suggestion, which derives from the flawed process in which the parties and trial court engaged, turns the plaintiff's burden of proof on its head. It was not the defendants' burden on the class certification issue to establish that the plaintiff's claim did not include conduct by Smith Barney. It was the plaintiff's burden to establish all the requisites for class certification and that she was an appropriate class representative. This necessarily required the plaintiff to establish that she had standing to sue all of the defendants, including Smith Barney.

Although ordinarily this conclusion would end the class certification inquiry adversely to the plaintiff, we cannot discount the possibility that, on the remand, the plaintiff may simply remove Smith Barney as a defendant.[9] Therefore, we address the defendants' other claims because they may arise on the remand.

### III

The defendants claim that the trial court abused its discretion in certifying this case as a class action because it did not undertake the requisite analysis to determine whether individual issues of law predominate and, therefore, the plaintiff has not established the requisite predominance for class certification. We agree.

In a purported national class action, such as the present case, "variations in state law may swamp any com-

---

[9] As discussed more fully in part III of this opinion, upon our remand the plaintiff will also have the opportunity, if she chooses to do so, to establish the requisite factual issues for class certification on the basis of an adequate record.

mon issues and defeat predominance." *Castano* v. *American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996), citing *Georgine* v. *Amchem Products, Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (decertifying District Court's class certification because "[t]he states have different rules governing the whole range of issues raised by the plaintiff's claims"), aff'd sub nom. *Amchem Products, Inc.* v. *Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Therefore, the trial court, faced with a class certification motion in such a case, "must consider how variations in state law affect predominance . . . ." *Castano* v. *American Tobacco Co.*, supra, 741. The plaintiff must establish either that there are no such variations or that they do not present insuperable obstacles. See id., 742. A trial court's "duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions." Id., 741; accord *Walsh* v. *Ford Motor Co.*, 807 F.2d 1000, 1016–17 (D.C. Cir. 1986), cert. denied, 482 U.S. 915, 107 S. Ct. 3188, 96 L. Ed. 2d 677 (1987); see also *In the Matter of Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("[n]o class action is proper unless all litigants are governed by the same legal rules"); *Andrews* v. *American Telephone & Telegraph Co.*, 95 F.3d 1014, 1024 (11th Cir. 1996) (class decertified due to need to interpret and apply gaming laws of all fifty states in order to assess legality of defendant's conduct); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (class certification improper because if more than few of laws of fifty states differ, District Court would face impossible task of instructing jury on relevant law); *In the Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995) (District Court required to decertify class because even if law of negligence differs among fifty states by mere "nuance," inappropriate to apply generic legal standard when fifty states' laws apply).

Furthermore, this analysis requires that the court "apply an individualized choice of law analysis to each plaintiff's claims . . . ." *Georgine* v. *Amchem Products, Inc.*, supra, 83 F.3d 627. Under Connecticut choice of law rules, for the plaintiff's claims that sound in tort, namely, civil conspiracy, unjust enrichment and CUTPA, we apply the law of the state in which the plaintiff was injured, unless to do so would produce an arbitrary or irrational result. See *O'Connor* v. *O'Connor*, 201 Conn. 632, 649–50, 519 A.2d 13 (1986). For the plaintiff's contract claim, we adopt the "significant relationship" test, and presume the application of the law of the state in which the bulk of the transaction took place. See *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, 243 Conn. 401, 406–407, 703 A.2d 1132 (1997), on appeal after remand, 252 Conn. 774, 750 A.2d 1051 (2000).

In the present case, the nationally dispersed potential class members entered their structured settlements in different jurisdictions throughout the nation. The representations to them that form the basis of the plaintiff's class claim, namely, the representations as to the cost of their annuities, and the representations that the value equaled the cost, necessarily were made to them by the claims adjusters and other agents of the defendants in those various jurisdictions. Thus, it was incumbent on the trial court, before certifying the class, to engage in an analysis, with respect to each of the four surviving counts of the class action, to determine whether the various differing state laws as to such representations shared a commonality that predominated over any differences in such laws, and it was incumbent on the plaintiff to present the data from which the trial court could engage in that analysis. The plaintiff and the trial court failed to undertake this task.

Instead, in addressing the predominance issue, the trial court specifically cited the lack of discovery as

a basis for rejecting the defendants' contention that "individual issues of state law and proof will predominate in any class treatment of the plaintiff's claims. The defendants also claim that the plaintiff should have to demonstrate, at the class certification stage, either that the laws of the states in question do not vary or that any such variations will not present 'insuperable obstacles' in any trial of this case as a class action." The court rejected this notion precisely because of the lack of discovery, which it attributed to the defendants rather than, as it had stated earlier, its desire to accommodate the desires of both sides. The court stated: "[B]ecause the defendants were successful in prevailing upon the court to limit the class discovery based on their assertion that there were thousands of claimants who arguably fall within the plaintiff's class definition, the discovery in this case was limited to a random sample of twenty-eight claim files. Beyond those claim files and a deposition, very little other discovery has yet been done pending resolution of the class certification issue. There has been essentially no discovery on the issue of the rebating scheme and none as to any defendant other than Travelers Casualty. Without the benefit of full class-wide discovery involving all the parties, the court has no definitive idea from which jurisdictions class members may emanate, and therefore, no way of knowing if Connecticut law conflicts with the state laws of the various members of the potential class. Therefore, the court declines to deny class certification on this basis. The questions of what state law to apply and whether variations in state law, if they exist, present insurmountable obstacles to maintaining the class remain to be seen and is an issue that the court may revisit as the litigation progresses."

This analysis was an abuse of discretion. It improperly postponed a critical inquiry on the class certification issue, namely, choice of law, and as a result relieved

the plaintiff of her burden to establish all of the require-
ments for certification.

Moreover, the trial court went further and ruled pre-
liminarily that Connecticut law would govern the case,
because "the home office of Travelers Casualty is in
Connecticut, as is the nationwide management of the
claims and structured settlement departments. Con-
necticut is where the company policies are set from
which the challenged actions of the defendants derive.
. . . [A]*t least at this stage of the proceedings, Connect-
icut choice of law rules need not be invoked to deter-
mine each absent class member's claim based on the
facts and circumstances of his or her individual case.*
The court therefore finds that the fact that the underly-
ing class claims arose and were settled throughout the
country does not undermine the predominance of the
relationship of Connecticut law to this case." (Citation
omitted; emphasis added.) This ruling was also an abuse
of discretion.

The approach taken by the trial court conflicts with
the fact that the plaintiff bears the burden of establish-
ing the requirements of class certification and with the
trial court's duty to undertake a rigorous analysis of
those certification requirements, including, as in the
present case of a proposed national class action, the
questions of differing laws and the choice of laws.
Although a trial court may "revisit the issue of class
certification throughout the proceedings"; *Rivera* v.
*Veterans Memorial Medical Center*, supra, 262 Conn.
739; that does not permit the court to abdicate its duty
of rigorous analysis so as to presume class certification.
See, e.g., *McKernan* v. *United Technologies Corp.*, 120
F.R.D. 452, 453 (D. Conn. 1988), citing *Rossini* v.
*Ogilvy & Mather, Inc.*, 798 F.2d 590, 597–98 (2d Cir.
1986).

Furthermore, this court is required to review the trial
court's ruling on the basis of such a rigorous analysis

and on the basis of the record upon which it was rendered, not on the basis of a record that future discovery may or may not support. Any gaps in that analysis may not be overlooked on the basis of such future possible discovery. In other words, even with the acquiescence of the parties, the trial court should not, consistent with the plaintiff's burden and with the court's duty of rigorous analysis, have limited the discovery to a degree that hampered both its performance of that duty and this court's duty to review its ruling on the basis of the record produced in the trial court.

The defendants also claim that the trial court abused its discretion in determining that common issues of fact predominate. Specifically, the defendants argue that, "[b]ecause [the] plaintiff's claims require, as an initial inquiry, a determination of whether a *'representation'* of cost was made with respect to the claims of *each* absent class member, individual—not common—questions of fact would predominate any trial of this action on a class basis," and that "[i]n cases where there is an incomplete written record, oral testimony" would be required from each class member, or his or her representative, and each claims adjuster or other agent of Travelers Casualty. (Emphasis in original.) We agree.

First, we reiterate our concern, noted previously, about the adequacy of the record in this respect. We simply do not see how thirty files out of tens of thousands can present an adequate record on which the plaintiff can establish, the trial court can find, and we can sustain, a finding of factual commonality that predominates over any factual differences.

Second, given our holding in *Macomber* v. *Travelers Property & Casualty Corp.*, supra, 261 Conn. 629–30, we agree with the defendants that the predominance inquiry must focus, not only on whether the defendants failed to disclose the costs and values of the annuities,

but also on whether they made the critical representations outlined in that case, namely, representations of the costs of the annuities, and representations that the values equaled the costs. These are necessarily individualized inquiries, the presence and predominance of which simply cannot be properly gauged on the basis of thirty files out of thousands. Moreover, we agree with the defendants that, to the extent that the files do not disclose such representations, the plaintiff would be required to establish them by virtue of oral testimony from the absent class members and the appropriate claims adjusters or other agents.[10]

Although these concerns might, in another case, persuade us to rule that the case is inappropriate for class certification because it does not contain the requisite predominance of common factual issues, we decline to do so in this case at this stage of the proceedings. The parties litigated and the trial court decided this case on the basis of discovery of only thirty files. We have already indicated our disapproval of that process, but we are disinclined to preclude the plaintiff from an opportunity to establish the requisite predominance of common factual issues on the basis of an adequate record, if she chooses to do so on the remand.

The order certifying this case as a class action and certifying the plaintiff as representative of the class is reversed, and the case is remanded to the trial court with direction to deny the plaintiff's motion, and for further proceedings according to law.

In this opinion the other justices concurred.

---

[10] Thus, we reject the plaintiff's contention that "at a minimum, as to the unjust enrichment, civil conspiracy, CUTPA, and CUIPA claims, [the] plaintiff need not establish any cost representation at all. The rebating practices themselves—if undisclosed—will be sufficient to establish a nexus to recovery." This contention is simply inconsistent with our decision in *Macomber* v. *Travelers Property & Casualty Corp.*, supra, 261 Conn. 620, in which we predicated the plaintiff's right to recover, for both the rebating and shortchanging schemes, on representations of cost and value that imposed a duty on the defendants to make a full disclosure of those alleged practices.