LABEEBAH AHMAD ET AL. *v.* YALE-NEW HAVEN
HOSPITAL, INC., ET AL.
(AC 27605)

Bishop, Gruendel and Cretella, Js.

Argued September 11—officially released November 6, 2007

*Henry F. Murray,* with whom were *Elizabeth A. Conklin* and, on the brief, *Daniel E. Livingston* and *Deborah L. McKenna,* for the appellants (plaintiffs).

*Kim E. Rinehart,* with whom were *Jeffrey R. Babbin* and, on the brief, *Rachel Lebejko Priester,* for the appellees (defendants).

*Opinion*

BISHOP, J. In this action, the plaintiffs[1] seek compensatory and punitive damages and declaratory and injunctive relief, claiming that the defendants, Yale-New Haven Hospital, Inc., Yale-New Haven Health Services Corp. and Bridgeport Hospital, engaged in a deliberate pattern and practice of concealing information from

[1] The plaintiffs named in this action are Labeebah Ahmad, Mario Maldonado, Isabel Maldonado, Maria Davidson, Quinton White, Angella Jackson, Delisa Tolson, Terry Reese and Carmen Ramirez.

their patients regarding the availability of free or reduced cost care from the hospitals' free bed funds, charged and collected from uninsured patients for hospital services at rates higher than insured patients and beyond the cost of care as required by state law, and engaged in abusive, oppressive and unethical debt collection practices. The plaintiffs appeal from the trial court's denial of their motion for class certification of this action.[2] We affirm the ruling of the trial court.

In their nine count amended complaint, the plaintiffs allege that they all received various services from the defendants[3] Yale-New Haven Hospital, Inc., or Bridgeport Hospital[4] and thereby incurred financial obligations to the defendants. The plaintiffs claim that they did not pay their hospital bills because they had no insurance or other means to pay for the services rendered and that the defendants, therefore, should have known that they were eligible for free or reduced cost care through the defendant hospitals' free bed funds. The plaintiffs allege that the defendants failed to notify them about the availability of such care, and because

[2] The plaintiffs' appeal challenges the denial of class certification on counts alleging various causes of action, including three counts alleging violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Because an order denying class certification for an action under CUTPA is an appealable final order under General Statutes § 42-110h, which provides that an order determining whether a CUTPA claim can be maintained as a class action "shall be immediately appealable by either party," and the CUTPA claims are inextricably intertwined with the plaintiffs' remaining claims, the denial of class certification in this instance is an appealable final judgment. See *Collins* v. *Anthem Health Plans, Inc.*, 266 Conn. 12, 29–30, 836 A.2d 1124 (2003).

[3] Some of the plaintiffs did not receive the services personally but are financially responsible for services rendered to a relative. For instance, Maria Davidson, Angella Jackson and Mario Maldonado and Isabel Maldonado are responsible for bills incurred for the treatment of their minor children. Quinton White is responsible for bills incurred for the treatment of his late wife.

[4] Billing and collection procedures for both defendant hospitals are controlled by the defendant Yale-New Haven Health Services Corp.

they were denied the opportunity to apply for the free bed funds and had no funds with which to pay their medical bills, they were subjected to the defendants' oppressive debt collection practices.

On the basis of the foregoing allegations, the plaintiffs claim that the defendants violated General Statutes § 19a-509b (bed funds statute) by failing to provide information regarding the availability of funds to pay their hospital charges and the procedures for applying for such funds. The plaintiffs also assert a common-law claim for fraudulent nondisclosure predicated on the defendants' alleged breach of their duty to provide notice under the bed funds statute. The plaintiffs further claim that the defendants violated General Statutes § 19a-673 (collecting at cost statute) by collecting from the plaintiffs more than "cost," as that term is defined by statute. Finally, the plaintiffs assert violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., premised on the underlying conduct set forth in the other causes of action.

Following discovery, the plaintiffs moved for class certification[5] of all of their claims. The plaintiffs sought certification of "all uninsured individuals who received or are receiving or will receive medical care from the [d]efendants, and who were or are or will be subject to the [d]efendants' debt collections procedures at any time after 1991 . . . ." They further sought certification of "[a]ll partially insured individuals who received or are receiving or will receive medical care from the

---

[5] The rules governing class actions in Connecticut include General Statutes § 52-105 and Practice Book §§ 9-7 and 9-8. General Statutes § 52-105 provides: "When the persons who might be made parties are very numerous, so that it would be impracticable or unreasonably expensive to make them all parties, one or more may sue or be sued or may be authorized by the court to defend for the benefit of all." See footnotes 6 and 7 for the text of Practice Book §§ 9-7 and 9-8, respectively.

defendants, and who paid or will pay more than a nominal amount toward the cost of said care, and who were or are subject to the [d]efendants' debt collections procedures at any time after 1991." By memorandum of decision filed January 25, 2006, the court denied the plaintiffs' motion for class certification. The court further articulated its decision on March 24, 2006, concluding that the plaintiffs failed to meet the predominance test of Practice Book § 9-8 because common issues of law and fact would not be the object of most of the efforts of the litigants and that the extensive individualized issues relating to the injury and causation elements substantially outweighed any efficiencies that might be achieved by adjudicating common questions of law or fact through a class action. This appeal followed.

We first set forth the standard of review governing class certification orders. "A trial court must undertake a rigorous analysis to determine whether the plaintiffs have borne the burden of demonstrating that the class certification requirements of Practice Book §§ 9-7[6] and 9-8[7] have been met. . . . A trial court nonetheless has broad discretion in determining whether a suit should proceed as a class action. . . . As long as the trial court has applied the proper legal standards in deciding whether to certify a class, its decision may . . . be

[6] Practice Book § 9-7 provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

[7] Practice Book § 9-8 provides: "An action may be maintained as a class action if the prerequisites of Section 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

overturned [only] if it constitutes an abuse of discretion. . . .

"[I]n determining whether to certify the class, a [trial] court is bound to take the substantive allegations of the complaint as true. . . . That does not mean, however, that a court is limited to the pleadings when determining whether the requirements for class certification have been met. On the contrary . . . class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the [plaintiffs'] cause of action . . . and . . . it [sometimes] may be necessary for the court to probe behind the pleadings before coming to rest on the certification question. . . . In determining the propriety of a class action, [however] the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [the class action rules] are met. . . . Although no party has a right to proceed via the class mechanism . . . doubts regarding the propriety of class certification should be resolved in favor of certification. . . .

"The rules of practice set forth a two step process for trial courts to follow in determining whether an action or claim qualifies for class action status. First, a court must ascertain whether the four prerequisites to a class action, as specified in Practice Book § 9-7, are satisfied. These prerequisites are: (1) numerosity—that the class is too numerous to make joinder of all members feasible; (2) commonality—that the members have similar claims of law and fact; (3) typicality—that the [representative] plaintiffs' claims are typical of the claims of the class; and (4) adequacy of representation—that the interests of the class are protected adequately. . . .

"Second, if the foregoing criteria are satisfied, the court then must evaluate whether the certification

requirements of Practice Book § 9-8 are satisfied. These requirements are: (1) predominance—that questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) superiority—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . . Because our class certification requirements are similar to those embodied in rule 23 of the Federal Rules of Civil Procedure, and our jurisprudence governing class actions is relatively undeveloped, we look to federal case law for guidance in construing the provisions of Practice Book §§ 9-7 and 9-8. . . . Finally, we give greater deference to a trial court's decision to certify a class than to its decision declining to do so." (Citations omitted; internal quotation marks omitted.) *Macomber* v. *Travelers Property & Casualty Corp.*, 277 Conn. 617, 626–28, 894 A.2d 240 (2006). With this background in mind, we turn to the plaintiffs' claim.

The plaintiffs claim that the court abused its discretion by not conducting the proper analysis when reviewing their petition for class certification. Specifically, the plaintiffs claim that the court improperly held that individual issues predominate over the general legal and factual claims. We disagree.

As noted, the rules of practice provide that an action may be maintained as a class action if questions of law or fact common to the members of the class predominate over any questions affecting only individual members. "[T]he fundamental purpose of the predominance inquiry is to determine whether the economies of class action certification can be achieved . . . without sacrificing procedural fairness or bringing about other undesirable results. . . . [C]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and

if these particular issues are more substantial than the issues subject only to individualized proof. . . .

"In order to determine whether common questions predominate, [a court must] . . . examine the [causes] of action asserted in the complaint on behalf of the putative class. . . . Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action. . . . Common issues of fact and law predominate if they ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief. . . . [When], after adjudication of the classwide issues, [the] plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual-[ized] claims, such claims are not suitable for class certification. . . .

"[N]umerous [federal] courts have recognized [however] that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate. . . . In assessing the predominance requirement in cases involving individualized damages, the [c]ourt's inquiry is limited to whether . . . the proposed methods [for computing damages] are so insubstantial as to amount to no method at all. . . . [The plaintiffs] need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis. . . . Particularly [when] damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification. . . .

"It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude [class] certification. See, e.g., [*Sikes* v. *Teleline, Inc.*, 281 F.3d 1350, 1366 (11th Cir.)] (These claims will involve extensive individualized inquiries on the issues of injury and damages—so much so that a class action is not sustainable.) [cert. denied sub nom. *Sikes* v. *American Telephone & Telegraph Co.*, 537 U.S. 884, 123 S. Ct. 117, 154 L. Ed. 2d 143 (2002)]; [*Rutstein* v. *Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1234, 1240 (11th Cir. 2000)] (declining to certify a class because most, if not all, of the plaintiffs' claims will stand or fall . . . on the resolution of . . . highly case-specific factual issues and liability for damages is a necessarily individualized inquiry) [cert. denied sub nom. *Zeirei Agudath Israel Bookstore* v. *Avis Rent-A-Car Systems, Inc.*, 532 U.S. 919, 121 S. Ct. 1354, 149 L. Ed. 2d 285 (2001)]. *Klay* v. *Humana, Inc.*, [382 F.3d 1241, 1259–60 (11th Cir. 2004)]; see also *Kohn* v. *American Housing Foundation, Inc.*, 178 F.R.D. 536, 542–44 (D. Colo. 1998) (class certification inappropriate because injury suffered by each class member was highly individualized and could not be separated from causation inquiry).

"These standards inform us that a court should engage in a three part inquiry to determine whether common questions of law or fact predominate in any given case. First, the court should review the elements of the causes of action that the plaintiffs seek to assert on behalf of the putative class. . . . Second, the court should determine whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to monetary or injunctive relief. . . . Third, the court should weigh the common issues that are subject to generalized proof against the issues requiring individualized proof

in order to determine which predominate. . . . Only when common questions of law or fact will be the object of most of the efforts of the litigants and the court will the predominance test be satisfied." (Citations omitted; internal quotation marks omitted.) *Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 329–32, 880 A.2d 106 (2005).

In denying the plaintiffs' motion for class certification, the court enumerated the various elements of each of the plaintiffs' claims and identified many aspects of the plaintiffs' claims that would require individualized inquiry. The court noted that establishing a violation of the bed funds statute would involve an individualized inquiry into what information the defendants possessed about each plaintiff, whether the defendants reasonably believed that each plaintiff had limited funds to pay the bill, whether each plaintiff applied for free care, whether each plaintiff signed a notice of free care funds, whether the plaintiffs saw signs relating to free care or whether they had any discussions with hospital personnel relating to free care. Additionally, the court noted that the plaintiffs must also demonstrate that any violation of the bed funds statute by the defendants caused them injury. Such a requirement would necessitate individualized proof relating to issues of the eligibility of each plaintiff and whether the knowledge of the statute would have resulted in the plaintiffs applying for the funds. The plaintiffs' claims would require proof relating to the issue of lack of notice and whether that lack of notice caused the alleged injuries. The court observed that the notice requirement alone would require individualized proof on each case because the manner of notice was different in each case. Moreover, the bed funds statute went into effect on October 1, 1991, and was amended on October 1, 2003. The court concluded, therefore, that the requirements of proof

will vary depending on the dates of treatment of each plaintiff.

The court also noted that individualized inquiries would be required as to the plaintiffs' other claims. In regards to the CUTPA claims, the court noted that the plaintiffs would need to present individualized evidence that they were eligible for free care funds and would have applied and received funds had notice of their availability been provided by the defendants. The court referred to the requirement of individualized proof that each plaintiff was uninsured as defined by the collecting at cost statute and that they each paid more than cost on the basis of the relevant cost to charge ratio in effect at the time they were treated. The court further noted that each member of the prospective class would be subjected to different affirmative defenses asserted by the defendants, including laches, res judicata and collateral estoppel.

In support of their contention that they have met the predominance requirement of Practice Book § 9-8, the plaintiffs focus on the behavior of the defendants and claim that because the defendants had a policy of concealing the existence of free or reduced health care, that this generalized proof is sufficient to justify class certification. As noted by the court, however, the allegation of a systemic policy is not sufficient to establish predominance. This is precisely the type of argument rejected by our Supreme Court in *Collins*. In *Collins*, the plaintiffs argued that they met the predominance requirement of Practice Book § 9-8 on the basis of the defendants' "company-wide policy," which constituted common issues among the class members. The court rejected this argument stating, inter alia, that "the plaintiffs essentially conflate the predominance requirement of Practice Book § 9-8 with the commonality requirement of Practice Book § 9-7. . . . [T]he commonality prerequisite simply requires the existence of a question

of law or fact that is common to the class. . . . [T]he predominance criterion is far more demanding in that it requires a probing inquiry to determine whether the common issues that are subject to generalized proof are more substantial than the issues subject only to individualized proof." (Citation omitted; internal quotation marks omitted.) *Collins* v. *Anthem Health Plans, Inc.*, supra, 275 Conn. 342. The *Collins* court further concluded that the plaintiffs ignored the fact that they had to prove causation and injury for each class member. Id.

The rationale employed in *Collins* is applicable to the case at hand. Even if the plaintiffs were to establish that the defendants had a policy of concealing the availability of free or reduced cost care, extensive individualized proof would still be required, as noted, regarding the manner and extent of harm to each class member. Thus, as in *Collins*, the plaintiffs must still prove causation and injury for each class member. In its analysis, the court specifically enumerated many instances in which individualized proof would be required of the plaintiffs and concluded that the common issues did not predominate over the individual issues. Because the court properly performed its predominance inquiry, and its findings are supported by the record, we cannot conclude that it abused its discretion in denying the plaintiffs' motion for class certification.

The ruling of the trial court denying the plaintiffs' motion for class certification is affirmed.

In this opinion the other judges concurred.