Glenn BECKWORTH, individually and derivatively on behalf of Discount Trophy & Co., Inc., Willis Beckworth, individually and derivatively on behalf of Discount Trophy & Co., Inc., Vicky Juneau, individually and derivatively on behalf of Discount Trophy & Co., Inc., Glenn Beckworth, individually and derivatively on behalf of Marco Plastic Industries, Inc., Plaintiffs,

v.

Marcel O. BIZIER and Barbara King Bizier, Defendants,

and

Discount Trophy & Co., Inc. and Marco Plastic Industries, Inc., Nominal Defendants.

Civ. No. 3:13CV1593 (AWT).

United States District Court, D. Connecticut.

Signed Sept. 30, 2014.

Carol L. Austin, J. Jerome Miller, Miller Walker & Austin, Charlotte, NC, Matthew C. Mason, Gregory & Adams, Wilton, CT, for Plaintiffs.

Erick M. Sandler, Ernest J. Mattei, Meredith A. Long, Day Pitney LLP, Hartford, CT, for Defendants.

### *RULING ON MOTION TO DISMISS*

ALVIN W. THOMPSON, District Judge.

In the Complaint, plaintiffs Glenn Beckworth, Willis Beckworth and Vicky Juneau, individually and derivatively on behalf of Discount Trophy & Co. Inc., and Glen Beckworth, individually and derivatively on behalf of Marco Plastic Industries, Inc., assert claims against defendants Marcel Bizier and Barbara King Bizier for Breach of Contract (First, Second, Third, Fourth and Eighth Causes of Action); Director Conflict of Interest in violation of Conn. Gen.Stat. § 33–781(1)(4) and § 33–783(a) and (c) (Fifth Cause of Action); Unlawful Distribution in violation of Conn. Gen.Stat. § 33–687(a) and (b) (Sixth Cause of Action); Breach of Fiduciary Duty (Seventh and Fifteenth Causes of Action); Refusal of Access to Books in violation of Conn. Gen.Stat. § 33–946(a) and § 33–948(a) and (c) (Ninth Cause of Action); Promissory Estoppel (Tenth Cause of Action); Right to Compel Involuntary Dissolution pursuant to Conn. Gen.Stat. § 33–896 *et seq.* (Eleventh Cause of Action); Fraud (Twelfth Cause of Action); Civil Conspiracy (Thirteenth Cause of Action); Unfair and Deceptive Trade Practices in violation of Conn. Gen. Stat. § 42–110b (Fourteenth Cause of Action); and Unjust Enrichment (Sixteenth Cause of Action).

The defendants have moved to dismiss each cause of action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the Ninth Cause of Action is being dismissed with leave to amend and the remaining causes of action are being dismissed.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

"The complaint, which [the court] must accept as true for purposes of testing its sufficiency," alleges the following circumstances. *Monsky v. Moraghan,* 127 F.3d 243, 244 (2d Cir.1997).

From 1998 to 2008, Glenn Beckworth managed and operated Plastic Plus Awards ("Plastic Plus"), a company "engaged in the wholesale trophy/awards component business with [its] primary customers being retail trophy/awards stores throughout the continental United States." (Complaint, Doc. No. 1 ("Compl.") ¶¶ 14, 16, 22). Although its operational headquarters were located in Charlotte, North Carolina, Plastic Plus was a Louisiana general partnership composed of Glenn Beckworth, Willis Beckworth and Vicky Juneau.

In or about 1998, Glenn Beckworth became acquainted with Marcel Bizier. At that time, Marcel Bizier was the sole shareholder, president and Chief Executive Officer of Discount Trophy & Co., Inc. ("Old DTC"), a Connecticut corporation in the same line of business as Plastic Plus. Prior to November 20, 2008 the four children of Marcel Bizier and his wife Barbara King Bizier were the sole shareholders of Marco Plastic Industries, Inc. ("MPI"), a Connecticut corporation that "acts· as a conduit in ordering trophy/awards parts and components from Chinese vendors and reselling them to DTC at a 5% markup." (*Id.* ¶ 24).

For 12 to 18 months prior to November 20, 2008, Marcel Bizier and Glenn Beckworth had discussed merging Plastic Plus and Old DTC "with a view to Glenn [Beckworth] and Marcel [Bizier] jointly operating [the combined businesses] for three years." (*Id.* ¶ 26). After the three year period, Glenn Beckworth would "purchas[e] the shares of Marcel Bizier and

assum[e] management and control of the combined businesses and Marcel [Bizier] [would] retire." (*Id.*).

By an agreement dated November 20, 2008 (the "Merger Agreement"), Old DTC and Plastic Plus agreed to merge and operate under the name Discount Trophy & Co., Inc. ("DTC"). Under the Shareholder Agreement, executed on the same date, Marcel Bizier owns 75% of DTC, Glenn Beckworth owns 11.25%, Willis Beckworth owns 11.25%, and Vicky Juneau owns 2.5%; additionally, Glenn Beckworth owns 20% of MPI and the Biziers' four children continue· to own 80% of MPI. The Shareholder Agreement provides that Marcel Bizier will be the President and Chief Executive Officer of DTC and Glenn Beckworth will be the Vice–President and Chief Operating Officer. DTC's Board of Directors is composed of Marcel Bizier, Glenn Beckworth and Barbara King Bizier. In connection with the merger, employment agreements were executed between DTC and Glenn Beckworth, Marcel Bizier, Barbara King Bizier, Vicky Juneau and Willis Beckworth. Also, commercial leases were entered into between DTC (as tenant) and Glenn Beckworth and Willis Beckworth (as landlords) (the "Commercial Leases").

The plaintiffs allege that after the merger, Marcel Bizier and Barbara King Bizier engaged in certain conduct that was in violation of the various merger-related agreements and was detrimental to DTC, MPI, their shareholders, and the plaintiffs. The plaintiffs allege that, *inter alia,* Marcel Bizier unilaterally increased his salary in violation of the Shareholder Agreement and Marcel Bizier's employment agreement ("M. Bizier Employment Agreement"); Marcel Bizier unilaterally reduced Glenn Beckworth's salary in violation of Glenn Beckworth's employment agreement ("G. Beckworth Employment Agreement");

Marcel Bizier and Barbara King Bizier unilaterally cancelled the Commercial Leases; Marcel Bizier has withheld access to the books and accounting records of DTC; DTC acquired the issued and outstanding shares of Barhill Manufacturing, Inc. ("Barhill"), a Pennsylvania corporation owned by Barbara King Bizier; and Marcel Bizier caused MPI to distribute a sum of $2,076,828.00 to his children without distributing a pro-rated amount to Glenn Beckworth.

In July 2012, the plaintiffs, proceeding individually and not derivatively, filed a seven-count complaint (hereinafter *"Beckworth I "*) against Marcel Bizier in North Carolina state court. Marcel Bizier thereafter removed the case to the United States District Court for the Western District of North Carolina. (*See Beckworth, et al. v. Bizier,* 3:2012–cv–00512 (W.D.N.C.)). The complaint in *Beckworth I* alleged, *inter alia,* that:

- Marcel Bizier unilaterally increased his salary in violation of the Shareholder Agreement and M. Bizier Employment Agreement (*Beckworth I* Compl. ¶ 34);
- Marcel Bizier unilaterally reduced Glenn Beckworth's salary in violation of the G. Beckworth Employment Agreement (*Beckworth I* Compl. ¶ 39);
- Marcel Bizier has withheld access to the books and accounting records of DTC (*Beckworth I* Compl. ¶ 70);
- DTC acquired the issued and outstanding shares of Barhill (*Beckworth I* Compl. ¶ 42);
- Marcel Bizier caused MPI to distribute a sum of $2,076,828.00 to his children without distributing a pro-rated amount to Glenn Beckworth (*Beckworth I* Compl. ¶ 60).

Marcel moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*Beckworth I* (Doc. No. 11)). On December 19, 2012, United States Magistrate Judge David S. Cayer issued a Memorandum and Recommendation which recommended that the motion to dismiss be granted and that the case be dismissed with prejudice. (*Beckworth I* (Doc. No. 14)). Subsequently, the court entered an order accepting the Memorandum and Recommendation, and granting the motion to dismiss. (*Beckworth I* (Doc. No. 15)). Judgment entered in favor of Marcel Bizier on January 25, 2013. (*Beckworth I* (Doc. No. 16)). The plaintiffs did not appeal.

The plaintiffs subsequently filed the present case against Marcel Bizier and Barbara King Bizier.

## II. LEGAL STANDARD

A claim is properly dismissed for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual alle-

gations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955 (internal quotation marks omitted)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.,* 34 F.Supp.2d 130, 131 (D.Conn.1999) (quoting *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

## III. DISCUSSION

### A. *Standing to Pursue Derivative Claims (First, Second, Third, Fourth, Fifth, Sixth, Seventh, Fourteenth and Sixteenth Causes of Action)*

The defendants argue that the plaintiffs lack standing to pursue derivative claims on behalf of DTC and MPI because they fail to satisfy the fair and adequate representative requirements of Conn. Gen.Stat. Sections 33–721 and 52–572j, and Fed. R. Civ. Pro. 23.1(a). The court agrees.

■ "A shareholder's derivative suit is an equitable action by the corporation as the real party in interest with a stockholder as a nominal plaintiff representing the corporation." *Barrett v. S. Connecticut Gas Co.,* 172 Conn. 362, 370, 374 A.2d 1051 (1977). To have standing to bring a derivative action a plaintiff must be found to "fairly and adequately represent[ ] the interests of the corporation in enforcing the right of the corporation" and "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Conn. Gen.Stat. §§ 33–721, 52–572j; *see also* Fed. R. Civ. Pro. 23.1(a) ("The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.").

■ The parties agree that the eight-part test that the Connecticut Supreme Court adopted in *Fink v. Golenbock,* 238 Conn. 183, 680 A.2d 1243 (1996) guides the

court in determining whether the plaintiffs are fair and adequate representatives of DTC and MPI:

> (1) whether the named plaintiff is the real party in-interest; (2) the plaintiff's familiarity with the litigation and willingness to learn about the suit; (3) the degree of control exercised by attorneys over the litigation; (4) the degree of support given to the plaintiff by the other shareholders; (5) the plaintiff's personal commitment to the action; (6) the remedies sought by the plaintiff; (7) the relative magnitude of the plaintiff's personal interests as compared to the plaintiff's interest in the derivative action itself; and (8) the plaintiff's vindictiveness toward the other shareholders.

*Id.* at 205, 680 A.2d 1243. The eight factors are "nonexclusive and interrelated, and ... it is frequently a combination of factors that guides a court in determining whether a plaintiff meets the requirements of fair and adequate representation." *Id.* at 205–06, 680 A.2d 1243. "Whether a plaintiff is an appropriate representative is fact-specific and depends on any number of factors." *Id.* at 205, 680 A.2d 1243.

█ The plaintiffs argue that this case is like *Fink v. Golenbock* because DTC and MPI are close corporations in which "DTC and MPI have interests that need to be represented and the plaintiffs are the only representatives in a position to protect those interests." (Mem. Opp. Mot. to Dismiss at 13). Although this point weighs in the plaintiffs' favor, the facts of this case are materially different from *Fink v. Golenbock* because the plaintiffs seek the involuntary dissolution of the corporations they claim to represent and thus are actively pursuing claims that put their interests in conflict with those of the corporations.

In the Eleventh Cause of Action the plaintiffs seek as a remedy the involuntary dissolution of DTC and MPI. Connecticut courts have not addressed whether a shareholder who brings a claim for dissolution of a corporation can be a fair and adequate representative of a corporation,[1] and the court declines to address whether such a shareholder necessarily fails the *Fink v. Golenbock* test. However, the court concludes that the sixth factor, i.e. the remedies sought by the plaintiff, weighs heavily against finding that a shareholder who brings a claim for dissolution of a corporation is a fair and adequate representative of a corporation and its shareholders.

The seventh factor also weighs against such a finding here. Several of the plaintiffs' claims put their personal interests in direct conflict with those of DTC. In the Second and Eighth Causes of Action, for unlawful reduction in Glenn Beckworth's salary, he seeks back pay for DTC's breach of the G. Beckworth Employment Agreement. *See* Compl. at ¶ 81 ("Marcel [Bizier] and Barbara [King Bizier] ... caused [DTC] to intentionally and maliciously breach the Employment Contract

---

1. The parties cite to two Wisconsin appellate court cases as authority on this issue. *See Betty Andrews Revocable Trust v. Vrakas/Blum, S.C.,* 323 Wis.2d 276 (Ct.App.2009) (holding that it was not an abuse of discretion for the trial court to determine that all of the minority shareholders of a corporation could fairly and adequately represent a corporation's interests where the minority shareholders' action to dissolve the company occurred three years before the derivative action); *Read v. Read,* 205 Wis.2d 558, 556 N.W.2d 768 (Ct. App.1996) (holding that it was not an abuse of discretion for the trial court to determine that a minority shareholder who filed motions for the dissolution of the corporation five months after filing his derivative claim could not fairly and adequately represent the corporation in a derivative action). Here, the plaintiffs seek dissolution of the corporations at the same time they seek to pursue derivative actions on the corporations' behalf.

with Glenn [Beckworth] subjecting [DTC] to liability to Glenn [Beckworth] in an amount in excess of [$120,000].""); Compl. at ¶ 118 (""[DTC] reduced the salary of Glenn [Beckworth] by the sum of [$40,000] per annum in violation of the aforesaid employment agreement.""). Although the plaintiffs bring both of these claims against the defendants, not DTC (one as a derivative claim on behalf of DTC and one as an individual claim on behalf of Glenn Beckworth), Glenn Beckworth's individual interest in recovering for the breach of the G. Beckworth Employment Agreement outweighs the interest the plaintiffs have as shareholders of DTC in recovering from the defendants. *See Analytica of Branford, Inc. v. Fenn,* 03:96–CV–00736CFD, 2007 WL 2221436 (D.Conn. July 27, 2007) (the ""debt obligation [the corporation] owed to [the plaintiff is among] the sort of personal interests that hold the potential for influencing his conduct in the litigation and demonstrate that Fenn would be unable to represent the interests of the corporation."").

Similarly, the plaintiffs allege in the Third Cause of Action that the defendants caused DTC damages in relocation expenses and higher rents by cancelling the Commercial Leases, and argue in their Memorandum in Opposition to Defendants' Motion to Dismiss that ""[DTC] will be liable [to the plaintiffs] for the breach of the [Commercial Leases]."" (Mem. Opp. Mot. to Dismiss at 38). Again, the plaintiffs' individual interests in recovering for the breach of the Commercial Leases is greater than, and in direct conflict with, the interests the plaintiffs have as shareholders of DTC in recovering from the defendants.

Applying the eight-part test established in *Fink v. Golenbock,* the court finds that the plaintiffs are not fair and adequate representatives of DTC and MPI. Although the plaintiffs' experience litigating this matter, representation by counsel and personal commitment to the action, as well as the lack of other similarly situated shareholders weigh in favor of a finding that the plaintiffs are appropriate representatives of DTC and MPI, these factors are outweighed by the remedies sought by the plaintiffs and the magnitude of the plaintiffs' personal interests as compared to the plaintiffs' interest in the derivative action itself. Therefore, the plaintiffs have not met their burden of proving by a preponderance of the evidence that they have standing to pursue the derivative claims. Accordingly, this court lacks jurisdiction and the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Fourteenth and Sixteenth Causes of Action are being dismissed without prejudice.[2]

### B. Preclusion of Individual Claims (Eighth, Tenth, Twelfth, Thirteenth, Fourteenth and Sixteenth Causes of Action)

■ Where a decision ""claimed to have preclusive effect was rendered by a district court sitting in diversity, [a federal court will] apply the preclusion law that would be applied by the state courts in ... the State in which the federal diversity court sits."" *Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.,* 362 Fed. Appx. 151, 154 (2d Cir.2010). Accordingly, North Carolina preclusion law applies to this case.

■ ""Preclusion doctrine encompasses two strands: res judicata and collateral

---

2. The defendants also argue that the derivative claims must be dismissed for failure to comply with Connecticut's universal demand statute and failure to state derivative claims in the Second and Third Causes of Action. The court does not address these arguments because it concludes that the plaintiffs do not have standing to pursue these claims.

estoppel. Res judicata, or claim preclusion, bars the relitigation of any claims that were or could have been raised in a prior proceeding between the same parties.... [C]ollateral estoppel, or issue preclusion, ... bars the relitigation of specific issues that were actually determined in a prior action." *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir.2008).

The court takes judicial notice of the rulings of the court in *Beckworth I*.

### 1. Res Judicata

■ "The application of res judicata turns on the existence of three factors: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir.2013) (internal quotation marks omitted).

#### a. Final Judgment on the Merits

■ "[W]hen a prior suit is dismissed with prejudice ... the judgment is a final judgment on the merits." *SV Int'l, Inc. v. Fu Jian Quanyu Indus. Co., Ltd.*, 820 F.Supp.2d 677, 683 (M.D.N.C.2011); *see also In re Tomlin*, 105 F.3d 933, 936–37 (4th Cir.1997) ("[D]ismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties." (internal quotation marks omitted)). "[U]nless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice." *McLean v. U.S.*, 566 F.3d 391, 396 (4th Cir.2009). However, "a dismissal under [12](b)(1) is not on the merits and thus is not given res judicata effect." *Cline v. Teich*, 92 N.C.App. 257, 374 S.E.2d 462, 466 (1988) (emphasis omitted) (citing 2A Moore's Federal Practice para. 12.07 [2.–1] (1987)).

■ In the present case, the defendants argue that the entirety of the court's ruling in *Beckworth I* was a judgment on the merits because the action was dismissed with prejudice. The plaintiffs argue that the court dismissed the complaint on both 12(b)(1) grounds and 12(b)(6) grounds, and therefore there was a final judgment on the merits of only the claims dismissed pursuant to 12(b)(6). Upon examination of the magistrate judge's Memorandum and Recommendation and the district judge's Order Affirming M & R, the court concludes that the entirety of the case was dismissed with prejudice pursuant to Rule 12(b)(6).

The Memorandum and Recommendation recommended dismissing the first, third, fourth, and fifth claims, stating "Under Connecticut law, individual stockholders lack standing to bring a derivative claim, and therefore dismissal for lack of subject matter jurisdiction is required under Rule 12(b)(1)." (*Beckworth I* (Doc. No. 14) at 9). At the conclusion of the Memorandum and Recommendation, the magistrate judge recommended that the motion to dismiss be granted and that the complaint be "dismissed with prejudice." (*Beckworth I* (Doc. No. 14) at 14)˙ (emphasis omitted). In the Order Affirming M & R, the district judge noted the seeming conflict between the recommendation with respect to Rule 12(b)(1) and that with respect to dismissal with prejudice, stating that dismissal for lack of subject matter jurisdiction should normally be without prejudice. (*Beckworth I* (Doc. No. 15) at 2 n. 1). The district judge resolved the conflict by stating, "[a]s the Motion to Dismiss incorporated both Rule 12(b)(1) and 12(b)(6), and the magistrate judge recommended dismissal of all claims with prejudice, the court determines that such dismissal is a Rule 12(b)(6) dismissal ..." (*Beckworth I* (Doc. No. 15) at 2 n. 1).

The determination that the dismissal was pursuant to Rule 12(b)(6) was not contrary to law. For example, in *Street v. Smart Corp.*, the trial court had granted a motion to dismiss on the ground that the plaintiffs did not have standing to prosecute the action. 157 N.C.App. 303, 578 S.E.2d 695, 698 (2003). The trial court had stated that the dismissal was with prejudice, but did not state whether it applied Rule 12(b)(1) or 12(b)(6)—both of which the defendants had argued were grounds for dismissal. The plaintiff argued that the trial court had erred by dismissing the case with prejudice for lack of standing. However, the court held that because the trial court had dismissed the action with prejudice, that "implicate[d] a Rule 12(b)(6), rather than a Rule 12(b)(1), dismissal." *Id.*

In *Beckworth I*, although the magistrate judge relied on Rule 12(b)(1) in recommending dismissal of the first, third, fourth and fifth claims, the complaint was dismissed with prejudice and the district judge unambiguously stated that the "dismissal is a Rule 12(b)(6) dismissal." Thus, the judgment in *Beckworth I* was "on the merits."

### b. Identity of Causes of Action

■■■ As to the second element, courts in North Carolina apply the "transactional" approach to determine whether causes of action are identical: "As long as the second suit arises out of the same transaction or series of transactions as the claim resolved by the prior judgment, the first suit will have preclusive effect." *Ohio*

*Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir.2009) (internal quotation marks omitted). Under this approach "res judicata will bar a newly articulated claim if it is based on the same underlying transaction and could have been brought in the earlier action." *Id.* (internal quotation marks omitted); *see also Root v. Cnty. of Fairfax*, 541 Fed. Appx. 333, 335 (4th Cir.2013) ("If the claim is a new claim, then there is not a judgment on it. Identical claims exist if the two claims arise out of the same transaction or series of transactions or the same core of operative facts.") (internal quotation marks omitted).

### (i) Eighth Cause of Action

■■■ In the present case, the Eighth Cause of Action asserts a claim for breach of contract, alleging that Glenn Beckworth's salary was unlawfully reduced. This claim was raised in the same form and with the same underlying facts in *Beckworth I* as the Second Claim for Relief. Thus, the Eighth Cause of Action is identical to the Second Claim for Relief in *Beckworth I* for res judicata purposes.[3]

### (ii) Tenth and Twelfth Causes of Action

■■■ In the present case, the Tenth and Twelfth Causes of Action assert claims for promissory estoppel and fraud, respectively. In the Tenth Cause of Action, the plaintiffs allege that:

[P]rior to November 8, 2008, Marcel [Bizier] and Glenn [Beckworth] discussed the combining of Plastic Plus and [DTC]

---

**3.** The plaintiffs do not appear to argue that the Eighth Cause of Action is not identical to the Second Claim for Relief in *Beckworth I*. Instead, they argue that the dismissal of the Second Claim for Relief in *Beckworth I* was "in the nature of one for failure to join a necessary party, which does not operate as an adjudication on the merits under federal or North Carolina law." (Mem. Opp. Mot. to

Dismiss (Doc. No. 28) at 29). However, as discussed in section III(B)(1)(a), *supra*, the motion to dismiss in *Beckworth I* was granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and was with prejudice. Therefore, the dismissal of the Second Claim for Relief was "on the merits" and has res judicata effect.

with a view to Glenn [Beckworth] and Marcel [Bizier] jointly operating [DTC] for three years and then Glenn [Beckworth] purchasing the shares of Marcel [Bizier] and assuming management and control of the combined business, at which time Marcel [Bizier] would retire. (Compl. ¶ 130). The Tenth Cause of Action further alleges that Glenn Beckworth relied on such understanding, the merger would not have taken place but for that understanding, and at the expiration of the three year period, Marcel Bizier did not retire or transfer his interest in DTC to Glenn Beckworth. Similarly, the Twelfth Cause of Action alleges that "Marcel [Bizier] made certain misrepresentations of fact, including affirmative promises that if Plaintiffs agreed to combine their company with his, he would retire in three years and sell his interest to Plaintiffs." (Compl. ¶ 150a). It further alleges that after the merger, Marcel Bizier ignored the terms of the M. Bizier Employment Agreement, the G. Beckworth Employment Agreement and the Shareholder Agreement.

The facts underlying the Tenth and Twelfth Causes of Action are the same as those underlying the Sixth Claim for Relief in *Beckworth I*. In the Sixth Claim for Relief, the plaintiffs state that in deciding to merge Plastics Plus with DTC, they relied on Marcel Bizier's statement to Glenn Beckworth that he would transfer his shares to Glenn Beckworth three years after the merger. They further state that after three years, Marcel Bizier refused to transfer his shares to Glenn Beckworth.

 The plaintiffs argue that the Tenth and Twelfth Causes of Action are not barred by the ruling on the Sixth Claim for Relief in *Beckworth I* because they assert different causes of action, i.e. promissory estoppel and fraud versus breach of an unenforceable promise. However, it is not the legal theory or how

a claim is styled that courts look to in determining whether the causes of action are identical; it is the facts underlying the cause of action. *See Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir.2004) ("The determination of whether two suits arise out of the same cause of action ... does not turn on whether the claims asserted are identical. Rather, it turns on whether the suits and the claims asserted therein arise out of the same transaction or series of transactions or the same core of operative facts. Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of res judicata through artful pleading and claim splitting given that [a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.") (internal citations and quotation marks omitted).

 Here, the underlying facts alleged in both cases are that in the discussions leading up to the merger, Marcel Bizier made certain statements to Glenn Beckworth, including that he would sell his shares to Glenn Beckworth and retire three years after the merger, and after the merger, Marcel Bizier acted contrary to his prior statements. To the extent that the plaintiffs argue that the Twelfth Cause of Action is not barred because the prior action only addressed Marcel Bizier's promise to sell his shares and subsequent refusal to do so, as opposed to the allegations in the Twelfth Cause of Action that Marcel Bizier made other representations of fact which he subsequently ignored, such an argument lacks merit.

 "If the claim existed at the time of the first suit and might have been offered in the same cause of action, then it is barred by res judicata from being brought in a subsequent suit." *Aliff v. Joy*

*Mfg. Co.*, 914 F.2d 39, 43–44 (4th Cir.1990) (internal citation and quotation marks omitted). "Newly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir.2008) (internal citation and quotation marks omitted). The plaintiffs claim that Marcel Bizier made other misrepresentations to the plaintiffs and acted contrary to those representations after the merger existed at the time *Beckworth I* was being litigated. Therefore, the Tenth and Twelfth Causes of Action are identical to the Sixth Claim for Relief in *Beckworth I* for the purposes of res judicata.

### (iii) *Thirteenth and Fourteenth Causes of Action*

■ In the present case, the Thirteenth and Fourteenth Causes of Action assert claims for civil conspiracy and unfair and deceptive trade practices, respectively. It is unclear what the factual basis is for the plaintiffs' claims in these two causes of action. The Thirteenth Cause of Action states:

> The allegations contained in Paragraphs 1 through 155 of this Complaint are realleged and incorporated by reference. The action and conduct of Marcel and Barbara acting in concert towards the Plaintiffs constitutes an unlawful civil conspiracy. The Plaintiffs have been damaged by the individual Defendants' conduct, the exact amount to be determined upon trial of this case.

(Compl. ¶¶ 156–158). The Fourteenth Cause of Action states:

> The allegations contained in Paragraphs 1 through 158 of this Complaint are realleged and incorporated by reference. The actions and conduct of the individual Defendants, Marcel and Barbara, both

individually and in their fiduciary capacities, constitute unfair and deceptive trade practices affecting commerce within the meaning of Con. Gen.Stat. § 42–110b. The Plaintiffs have been damaged by the Defendants' conduct and are entitled to have their actual damages trebled and to have their reasonable attorney's fees paid.

(Compl. ¶¶ 159–161).

While the complaint in the present case contains largely the same factual allegations as those made in *Beckworth I,* the present case does contain two new allegations: that DTC cancelled the Commercial Leases with Willis Beckworth and Glenn Beckworth in June 2013, and that the plaintiffs requested and were denied the ability to inspect DTC's books and records in July 2013. Because these allegations were not raised in *Beckworth I* and could not have been raised in that case, there is not an identity of causes of action for res judicata purposes with respect to the Thirteenth and Fourteenth Causes of Action in the present case.

### (iv) *Sixteenth Cause of Action*

The Sixteenth Cause of Action asserts a claim for unjust enrichment, alleging that Marcel Bizier is wrongfully paying himself in excess of $250,000 annually in the form of salary and bonuses, in violation of his employment contract. The facts underlying the Sixteenth Cause of Action are the same as those underlying the First Claim for Relief in *Beckworth I.* Although the legal theory in the First Claim for Relief in *Beckworth I* was breach of contract, the facts underlying the claim were that Marcel Bizier was paying himself $250,000 in excess of the compensation mandated by the M. Bizier Employment Agreement. As discussed above, the fact that the legal theories under which the Sixteenth Cause of Action and the First Claim for Relief in *Beckworth I* are brought are different is

not material because it is the underlying facts that matter for res judicata purposes. Because the core of operative facts underlying both claims is the same, the claims are identical.

### c. Identity of Parties

■■ "Both the party asserting res judicata and the party against whom res judicata is asserted must be either parties or stand in privity with parties to the original action." *Williams v. Peabody,* 217 N.C.App. 1, 719 S.E.2d 88, 94 (2011).

Between the plaintiffs in their individual capacities and defendant Marcel Bizier in the Tenth, Twelfth and Sixteenth Causes of Action, it is readily apparent that there is identity of the parties. The Eighth Cause of Action, however, is brought against both Barbara King Bizier and Marcel Bizier. Thus, the court must determine whether Barbara King Bizier stands in privity with Marcel Bizier in the prior action.

■■ The defendants do not argue that Barbara King Bizier stands in privity with Marcel Bizier, but rather that the prior judgment precludes the plaintiffs' claims against Barbara King Bizier because "[a] party that was not a party to the first action . . . may assert collateral estoppel as a defense against a party who has previously had a full and fair opportunity to litigate a matter an[d] now seeks to reopen the identical issues with a new adversary." (Mem. Supp. Mot. to Dismiss (Doc. No. 20–1) at 28 n. 22). However, that proposition, which is an exception to the requirement of mutuality of the parties, applies only to the defensive use of collateral estoppel. *See Mays v. ⁹ Clanton,* 169 N.C.App. 239, 609 S.E.2d 453, 455 (2005) ("[The North Carolina] Supreme Court no longer requires mutuality of parties when a party seeks to assert collateral estoppel defensively. The party invoking collateral estoppel need not have been a party to or

in privity with a party in the first lawsuit as long as the party to be collaterally estopped had a full and fair opportunity to litigate the issue in the earlier action." (internal citations and quotation marks omitted)). North Carolina courts have not abandoned the mutuality requirement for *res judicata. See Guilford Cnty. v. Davis,* 123 N.C.App. 527, 473 S.E.2d 640, 642 (1996) ("As demonstrated above, the requirement of mutuality of the parties is included in both [res judicata and collateral estoppel]. However, our Courts have carved out exceptions to the mutuality requirement in certain cases applying collateral estoppel."); *Thomas M. McInnis & Assocs., Inc. v. Hall,* 318 N.C. 421, 349 S.E.2d 552, 559 n. 4 (1986) ("There seems to be no parallel move to abandon the traditional [requirement] of mutuality for *res judicata.* Abandoning mutuality for *res judicata* as defined herein would accomplish little in a practical sense. Because a plaintiff is generally regarded as having a separate cause of action against each obligor even when the subject matter of the claims is identical, the [requirement] of identity of cause of action would render *res judicata* unavailable to one not a party or privy in any case."). Thus, a non-party to the original action seeking to assert a *res judicata* defense must stand in privity with parties to the original action. The parties have not briefed this issue with respect to Barbara King Bizier, so the court does not conclude that the requirements for application of res judicata are satisfied with respect to Barbara King Bizier and the Eighth Cause of Action. However, as discussed below, the requirements for application of collateral estoppel are satisfied.

### 2. Collateral Estoppel

■■ The defendants argue that the Eighth Cause of Action should be dis-

missed because it is indistinguishable from the breach of contract claim that was asserted against Marcel Bizier in the Second Claim for Relief in *Beckworth I,* and "collateral estoppel bars Glenn [Beckworth] from relitigating whether he can sue an individual director of DTC for breach of [the G. Beckworth Employment Agreement]." (Mem. Supp. Mot. to Dismiss (Doc. No. 20–1) at 29).

■■■ "In order to assert collateral estoppel under North Carolina law, a party must show that the issue in question was identical to an issue actually litigated and necessary to the judgment, that the prior action resulted in a final judgment on the merits, and that the present parties are the same as, or in privity with, the parties to the earlier action." *Sartin,* 535 F.3d at 287–88.

### a. Final Judgment on the Merits

With respect to whether there was a final judgment on the merits in *Beckworth I,* the plaintiffs argue that dismissal of the Second Claim for Relief in *Beckworth I* "was . . . in the nature of one for failure to join a necessary party, which does not operate as an adjudication on the merits under North Carolina law." (Mem. Opp. Mot. to Dismiss (Doc. No. 28) at 29). The plaintiffs' argument lacks merit. As discussed in section III(B)(1)(a), *supra, Beckworth I* was dismissed with prejudice. Thus, the prior action resulted in a final judgment on the merits.

### b. Identical Issue

In *Beckworth I,* the Memorandum and Recommendation recommended that the court dismiss the Second Claim for Relief because Glenn Beckworth could not bring suit against the Biziers for breaching the G. Beckworth Employment Agreement, and the district judge accepted the recommendation (*Beckworth I* (Doc. No. 14) at 11; *Beckworth I* (Doc. No. 15) at 2).

The plaintiffs contend that whether Glenn Beckworth can sue an individual director of DTC for breach of the G. Beckworth Employment Agreement is not at issue in this case because their claims regarding the reduction of Glenn Beckworth's compensation "are against the Biziers for breaching their fiduciary duties to DTC under Connecticut law by causing DTC to breach the [the G. Beckworth Employment Agreement]." (Mem. Opp. Mot. to Dismiss (Doc. No. 28) at 29). This argument lacks merit. The Eighth Cause of Action, titled "Individual Claim—Breach of Contract—Unlawful Reduction in Salary," states:

> On or about January 1, 2011 and continuing until the present time, Company reduced the salary of Glenn [Beckworth] by the sum of Forty Thousand and No/100 Dollars ($40,000.00) per annum in violation of the . . . [G. Beckworth Employment Agreement]. . . . Marcel [Bizier] and Barbara [King Bizier], acting unlawfully as officers and directors of Company, orchestrated the reduction in salary out of malice and ill will and for no business purpose. . . . **Marcel [Bizier] and Barbara [King Bizier] are personally liable to Glenn [Beckworth] for any unlawful reduction in salary.**

(Compl. ¶¶ 118, 120 and 122) (emphasis added). Thus, this issue is identical to an issue actually litigated and necessary to the judgment in *Beckworth I.*

### c. Identity of the Parties

■■■ The Second Claim for Relief in *Beckworth I* was an individual claim by Glenn Beckworth against Marcel Bizier alone. The Eighth Cause of Action in this case is an individual claim by Glenn Beckworth against Marcel Bizier and Barbara King Bizier. However, North Carolina has "abandon[ed] the strict 'mutuality of

estoppel' requirement for defensive uses of collateral estoppel." *Whitacre P'ship v. Biosignia, Inc.,* 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (citing *Thomas M. McInnis & Assocs. v. Hall,* 318 N.C. 421, 434, 349 S.E.2d 552, 560 (1986)).

Because the plaintiffs have had a full and fair opportunity to litigate this issue in *Beckworth I,* the defendants may assert collateral estoppel as a defense to the Eighth Cause of Action with respect to Barbara King Bizier.

\* \* \* \* \* \*

Therefore, the motion to dismiss is being granted as to the Eighth, Tenth, Twelfth and Sixteenth Causes of Action, and the motion to dismiss the Thirteenth and Fourteenth Causes of Action against both Marcel Bizier and Barbara King Bizier is being denied to the extent it relies on res judicata grounds.

## C. *Individual Causes of Action (Thirteenth, Fourteenth and Fifteenth Causes of Action)* [4]

### 1. Thirteenth Cause of Action

■ The defendants argue that the plaintiffs have failed to state a claim for civil conspiracy because they have not identified an underlying tort claim that is actionable. The court agrees.

■ Under Connecticut law, the elements of a claim for civil conspiracy are: (1) [A] combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff.

*Harp v. King,* 266 Conn. 747, 779, 835 A.2d 953 (2003). Likewise, under Florida law, a cause of action for civil conspiracy requires: "(1) an agreement between two or more parties; (2) to perform an unlawful act; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.,* 527 F.Supp.2d 1355, 1370 (M.D.Fla.2007). Similarly, North Carolina law requires the following elements: "(1) an agreement between two or more persons to commit a wrongful act; (2) an overt act in furtherance of the agreement; and (3) damage to the plaintiff as a result of the wrongful act." *Feldman v. Law Enforcement Assocs. Corp.,* 779 F.Supp.2d 472, 497 (E.D.N.C.2011).

Thus, under each state's law an actionable underlying tort or wrong is required. *See Macomber v. Travelers Prop. & Cas. Corp.,* 277 Conn. 617, 636, 894 A.2d 240 (2006) ("[T]o state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort."); *Bray & Gillespie,* 527 F.Supp.2d at 1370 ("Thus, an actionable conspiracy requires an actionable underlying tort or wrong." (internal quotation marks omitted)); *Feldman,* 779 F.Supp.2d at 498 (holding that the plaintiffs failed to state a claim for civil conspiracy where the "plaintiffs ... failed to allege the existence of a 'predicate tort' to support their civil conspiracy claim.").

Although the plaintiffs do not specify in the complaint what underlying tort or wrong forms the basis for their civil conspiracy claim, the plaintiffs state in their opposition to the motion to dismiss that

---

4. The defendants also moved to dismiss the Eighth, Tenth, Twelfth and Sixteenth Causes of Action for failure to state a claim upon which relief can be granted. However, be-

cause the court granted the motion to dismiss those causes of action on res judicata and collateral estoppel grounds, the court does not address them here.

"because [they] have a viable fraud claim, their civil conspiracy claim survives as well." (Mem. Opp. Mot. to Dismiss (Doc. No. 28) at 35). However, because the court found that the fraud claim against Marcel Bizier in the Twelfth Cause of Action was barred by res judicata, the fraud claim is not "actionable" and therefore cannot serve as the basis for the conspiracy claim.

Because the plaintiffs have not alleged an actionable underlying tort or wrong that serves as the basis for their civil conspiracy claim, the plaintiffs have failed to state a claim upon which relief can be granted. Therefore, the motion to dismiss is being granted as to the Thirteenth Cause of Action.

### 2. Fourteenth Cause of Action

■ The defendants argue that the plaintiffs have failed to state a claim for a violation of CUTPA. The plaintiffs argue that they have alleged a valid CUTPA claim based on the distribution from MPI to Marcel Bizier's children and the defendants' actions in connection with the merger of Plastic Plus and DTC.

■ "A claim under CUTPA requires that [the] plaintiff allege that [the] defendant engaged in 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce'" where trade or commerce is defined as "'the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value in this state.'" *PTI Assocs., LLC v. Carolina Int'l Sales Co.*, 3:09–cv–849(WWE), 2010 WL 363330, at *5 (D.Conn. Jan. 26, 2010) (quoting Conn. Gen.Stat. §§ 42–110b, 42–110a). "There is no viable claim under CUTPA when the practice complained of is incidental to the true trade or business conducted." *Brandewiede v. Emery Worldwide*, 890 F.Supp. 79, 81 (D.Conn. 1994). "In evaluating whether alleged actions were performed in the 'conduct of any trade or commerce,' the inquiry focuses not only on the nature of the acts themselves, but on the relationship between the actor and the allegedly injured party. 'It strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, cause[d] by any person in the conduct of any trade or commerce.'" *Milo v. Galante*, No. 3:09–cv–1389(JBA), 2011 WL 1214769, at *10 (D.Conn. Mar. 28, 2011) (internal citations omitted) (quoting *Vacco v. Microsoft Corp.*, 260 Conn. 59, 88–90, 793 A.2d 1048 (2002)).

■ The defendants argue, *inter alia*, that the plaintiff's CUTPA claims should be dismissed because they arise from an intracorporate conflict and the plaintiffs are not consumers, competitors, or other business persons affected by the defendants' acts. "[P]urely intracorporate conflicts do not constitute CUTPA violations . . . ." *Ostrowski v. Avery*, 243 Conn. 355, 379, 703 A.2d 117 (1997). However, the Connecticut Supreme Court has distinguished the situation where the alleged wrongdoer's actions go "well beyond governance of the corporation, and [are] in direct competition with the interests of the corporation." *Fink v. Golenbock*, 238 Conn. 183, 213, 680 A.2d 1243 (1996). In *Fink*, the court's analysis was that:

Golenbock asks us to focus solely on the relationship between the individual, as opposed to corporate, parties to determine whether CUTPA should apply. Characterizing the action as a dispute over the internal governance of the corporation, he argues that CUTPA does not extend to cover his actions. We disagree. Golenbock's actions went well

beyond governance of the corporation, and placed him in direct competition with the interests of the corporation. *Id.* (upholding the trial court's finding of a CUTPA violation where one owner of a private corporation forced the other owner to leave the medical practice that was the business of the corporation; used the corporation's assets, equipment and employees to establish a new corporation and practice, and solicited the clientele of the first corporation). *See also Larsen Chelsey Realty Co. v. Larsen,* 232 Conn. 480, 485, 656 A.2d 1009 (1995) (reinstating a jury verdict finding that CUTPA had been violated, where the president of a realty company accepted employment with a competing firm and thereafter falsely informed the clients of the realty company that it was being taken over by the competitor, urged them to take their business to the competitor, and encouraged the employees of the realty company to seek employment with the competitor).

In contrast, Connecticut courts have "declined to hold corporate insiders liable under CUTPA where their internal corporate actions, however wrongful or self-interested, were not commercial or competitive in nature." *Bell v. Dermatologic Cosmetic Labs., Ltd.,* CV116024648, 2012 WL 3104535 (Conn.Super.Ct. July 3, 2012) (collecting cases). *See also Keaney v. Eastern Computer Exchange, Inc.,* No. 3:03CV1893(RNC), 2004 WL 885100 (D.Conn. Apr. 21, 2004) (finding that CUTPA did not apply where the plaintiff entered into an ownership agreement with the defendants, but after several years the defendants refused to acknowledge him as a co-owner of the business and failed to give him a share of the profits); *Russell v. Russell,* 91 Conn.App. 619, 647–

48, 882 A.2d 98 (2005) (finding that while the defendant wrongfully retained proceeds from a life insurance policy, he did not use them in manner that placed him in direct competition with the corporation, so the dispute concerned only ownership interest and distribution of insurance money, not business of the corporation); *NatTel, LLC v. SAC Capital Advisors,* No. 3:04CV1061(JBA), 2005 WL 2253756, *12–13 (D.Conn. Sept. 16, 2005) (dismissing CUTPA claim where claims related to conduct that allegedly diluted or obscured value of plaintiff's shares).

Here, the plaintiffs' claim arising from the distribution from MPI to Marcel Bizier's children concerns a dispute between the plaintiffs as shareholders of MPI and the defendants as directors of MPI. The court agrees that this is a purely intracorporate dispute, to which CUTPA does not apply.[5]

The plaintiffs' individual CUTPA claim arising from the merger of DTC and Plastic Plus and the defendants' subsequent actions are also outside the scope of CUTPA. The alleged conduct in violation of the various merger-related agreements, including increasing Marcel Bizier's salary, reducing Glenn Beckworth's salary, cancelling the Commercial Leases, withholding access to corporate records, and acquiring Barhill, are all disputes that are internal to DTC. Therefore, the CUTPA claims are being dismissed.

### 3. Fifteenth Cause of Action

■ The defendants argue that the plaintiffs have failed to state a claim for breach of fiduciary duty in the Fifteenth Cause of Action. The plaintiffs argue that they brought the Fifteenth Cause of Action as shareholders of DTC who suffered

---

**5.** As discussed in section III(A), the derivative claims on behalf of DTC in the plaintiffs' Fourteenth Cause of Action were dismissed for lack of standing. Such claims also fail because they are intracorporate disputes.

individual harm when the defendants caused DTC to cancel the Commercial Leases.

■ " 'It is ... well settled that if [an] injury is one to the plaintiff as a stockholder, and to him individually, and not to the corporation, as where an alleged fraud perpetrated by the corporation has affected the plaintiff directly, the cause of action is personal and individual.... In such a case, the plaintiff-shareholder sustains a loss separate and distinct from that of the corporation, or from that of other shareholders, and thus has the right to seek redress in a personal capacity for a wrong done to him individually.' " *May v. Coffey,* 291 Conn. 106, 114–15, 967 A.2d 495 (2009) (quoting *Yanow v. Teal Industries, Inc.,* 178 Conn. 262, 281–82, 422 A.2d 311 (1979)). The plaintiffs allege here that by cancelling the Commercial Leases, the defendants caused them to suffer individual harm. This injury is to the plaintiffs as lessors to DTC, not as stockholders. Their injuries are therefore unlike the injuries contemplated by the line of cases where shareholders were permitted to sue directors individually rather than derivatively. *See May,* 291 Conn. at 114–15, 967 A.2d 495 (concluding that a stock offering to existing shareholders at a price that was unreasonably low did not result in a separate and distinct harm to the plaintiffs); *Smith v. Snyder,* 267 Conn. 456, 462, 839 A.2d 589 (2004) (dismissing the plaintiff shareholders' individual breach of fiduciary claim against director because the plaintiffs alleged that the corporation was harmed, but not that the plaintiffs sustained an injury separate and distinct from that suffered by any other shareholder or by the corporation). Therefore, the Fifteenth Cause of Action is being dismissed for failure to state a claim.

### D. Abstention (Ninth and Eleventh Causes of Action)

■ The defendants argue that the court should abstain from exercising its jurisdiction over Counts Nine and Eleven pursuant to *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[6]

#### 1. Eleventh Cause of Action

■ The Eleventh Cause of Action, the involuntary dissolution claim, is brought pursuant to Conn. Gen.Stat. § 33–896 *et seq.* The defendants argue that "it is well-settled in the Second Circuit that the court should abstain from exercising jurisdiction" over such an involuntary dissolution claim (citing *Friedman v. Revenue Mgmt. of N.Y., Inc.,* 38 F.3d 668, 670–71 (2d Cir. 1994)). (Mem. Supp. Mot. to Dismiss (Doc. No. 20–1) at 43–44).

■ Pursuant to the *Burford* abstention doctrine, "a federal court may abstain from hearing a case or claim over which it has jurisdiction to avoid needless disruption of state efforts to establish co-

---

**6.** The defendants argue in the alternative, without any supporting authority, that the court lacks subject matter jurisdiction over claims brought under Conn. Gen.Stat. sections 33–896 and 33–948(a). These statutes give jurisdiction to "[t]he superior court for the judicial district where the corporation's principal office or, if none in this state, its registered office, is located" to dissolve a corporation or order inspection and copying of corporate records when certain conditions are met. Actions pursuant to these statutes nonetheless fall within the court's diversity jurisdiction. *See* 28 U.S.C. § 1332. "[A] state statute cannot divest a federal District Court of diversity jurisdiction." *Elgard Corp. v. Brennan Const. Co.,* 157 F.R.D. 1, 2 (D.Conn.1994) (citing *Railway Company v. Whitton's Administrator,* 80 U.S. (13 Wall.) 270, 286, 20 L.Ed. 571 (1872)) (holding that the federal courts have diversity jurisdiction over an action brought pursuant to a Connecticut statute granting jurisdiction to the state superior court).

herent policy in an area of comprehensive state regulation." *Friedman,* 38 F.3d at 671 (citing *Burford v. Sun Oil Co.,* 319 U.S. 315, 332, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)). The Supreme Court has "distilled" the *Burford* abstention doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (internal quotation marks omitted). The Second Circuit has "identified three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public .... (1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut,* 585 F.3d 639, 650 (2d Cir.2009).

"[E]very federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate, assuming jurisdiction existed." *Friedman v. Revenue Mgmt. of New York, Inc.,* 38 F.3d 668,

671 (2d Cir.1994). "Courts within the Second Circuit 'have almost uniformly ruled that even if federal courts have subject matter jurisdiction over claims for corporate dissolution, they should abstain from exercising it.'" *Kermanshah v. Kermanshah,* 580 F.Supp.2d 247, 271 (S.D.N.Y. 2008) (quoting *Feiwus v. Genpar, Inc.,* 43 F.Supp.2d 289, 296 n. 6 (E.D.N.Y.1999)). *See, e.g., Feiwus,* 43 F.Supp.2d at 298 ("Given the importance to New York of coherent corporate regulation, the decision to dissolve a New York corporation is best left to the fora that, because of familiarity, are better situated to appreciate the trajectory of the state's evolving corporate policy."). *But see Schumann v. Schumann,* 3:11CV888 WWE, 2012 WL 2016192 (D.Conn. June 5, 2012) (allowing minority shareholders alleging claims of fraud and breach of fiduciary duty against a director to proceed with their direct action for dissolution against defendants under Section 33–896, but not addressing whether the court should abstain from exercising jurisdiction over claims brought pursuant to Conn. Gen.Stat. § 33–896).

Here, the plaintiffs seek to compel the involuntary dissolution of DTC and MPI, two Connecticut corporations, under Conn. Gen.Stat. § 33–896. Conn. Gen.Stat. §§ 33–896–33–900 is a detailed statute that governs, *inter alia,* the grounds and procedure for dissolution of a corporation upon a proceeding by a shareholder, creditor or the corporation itself. Assessing the factors that the Second Circuit has identified, the court finds that federal review of the plaintiffs' dissolution claim would risk disrupting Connecticut's efforts to establish a coherent policy with respect to a matter of substantial public concern. Thus, the court abstains from exercising its jurisdiction over this claim, and the Eleventh Cause of Action is being dismissed.

## 2. Ninth Cause of Action

 The plaintiffs bring the Ninth Cause of Action, a request for an order to inspect and copy the books and records of DTC, pursuant to Conn. Gen.Stat. § 33–948(a) and (c).

The defendants argue that the federal courts "should abstain from exercising jurisdiction" over this claim because it involves "[m]any of the same interests that that support abstention in the case of a corporate dissolution claim." (Mem. Suppl. Mot. to Dismiss (Doc. No. 20–1) at 45). The defendants cite no case directly on point in support of their position, and the court has found none contrary to their position. *But see Frank v. LoVetere*, 363 F.Supp.2d 327, 340–41 (D.Conn.2005) (adjudicating a corporate inspection claim brought pursuant to Section 33–946(c)).

Reviewing the factors set forth in *Liberty Mut. Ins. Co. v. Hurlbut*, the court concludes that it is appropriate to exercise jurisdiction over the Ninth Cause of Action. Adjudicating the plaintiffs' corporate records inspection claim does not require the court to "give one or another debatable construction" to Sections 33–945 to 33–950, and the defendants have provided no support for the proposition that the review of corporate records is an area of traditional state concern.

As to the merits of the claim, Section 33–948(a) provides that:

"If a corporation does not allow a shareholder who complies with subsection (a) of section 33–946 to inspect and copy any records required by that subsection to be available for inspection, the superior court for the judicial district where the corporation's principal office or, if none in this state, its registered office is located may summarily order inspection and copying of the records demanded at the corporation's expense upon application of the shareholder."

Under Conn. Gen.Stat. § 33–946(a):

"A shareholder of a corporation is entitled to inspect and copy ... any of the records of the corporation described in subsection (e) of section 33–945 if [certain demand requirements are met]."

Conn. Gen.Stat. § 33–945(e) requires a corporation to keep a copy of certain enumerated records at its principal office:

A corporation shall keep a copy of the following records at its principal office: (1) Its certificate of incorporation or restated certificate of incorporation, all amendments to them currently in effect and any notices to shareholders referred to in subsection (*l*) of section 33–608 regarding facts on which a document is dependent; (2) its bylaws or restated bylaws and all amendments to them currently in effect; (3) resolutions adopted by its board of directors creating one or more classes or series of shares and fixing their relative rights, preferences and limitations, if shares issued pursuant to those resolutions are outstanding; (4) the minutes of all shareholders' meetings and records of all action taken by shareholders without a meeting for the past three years; (5) all written communications to shareholders generally within the past three years, including the financial statements furnished for the past three years under section 33–951; (6) a list of the names and business addresses of its current directors and officers; and (7) its most recent annual report delivered to the Secretary of the State under section 33–953.

The plaintiffs allege that on July 1, 2013, they requested access to certain DTC books and records, "in good faith ... in compliance with Con[n]. Gen. Stat § 33–

946(d)",[7] and DTC "interfered with and actually or constructively refused to provide copies of such records" to Glenn Beckworth. (Compl. ¶¶ 123–128).

In their July 1, 2013 letter, the plaintiffs requested 20 categories of documents, the vast majority of which the plaintiffs are not entitled to inspect pursuant to Section 946(a) because they are not enumerated in Section 33–945(e). *See, e.g.,* Compl., Ex. F ¶ 11 (requesting "[a]ll correspondence, written and electronic, between DTC–MPI–Barhill and the CPA firm Gitlin, Campise 2008–2013."). The plaintiffs also request, in their July 1, 2013 letter, documents related to MPI and Barhill, neither of which the plaintiffs name as defendants in the Ninth Cause of Action, and it does not appear based on the allegations in paragraph 48 of the Complaint that either plaintiff is a shareholder of Barhill. *See id.,* ¶ 13 (requesting "[w]ire transfers to/from DTC, MPI, and Barhill accounts-2008–2013.").

Requests 2 and 18, which may include some documents enumerated in Section 33–945(e), are overly broad. Request 2 seeks "[f]inancial statements for DTC, MPI, and Barhill- 2008–2013." Although the plaintiffs might be entitled to review financial statements that DTC furnished to shareholders for the three years prior to July 1, 2013 pursuant to Section 33–945(e)(5), they are not entitled to review DTC's financial statements furnished to shareholders for the other years. Request 18 seeks "[m]inutes of Board of Directors and Shareholders' meetings for DTC, MPI, and Barhill- 2008–2013." Section 33–945(e)(4) also places a three year limit on such requests.

Thus, none of the 20 categories of documents listed in the July 1, 2013 letter

matched the provisions of Section 33–945(e), and the allegations in the Ninth Cause of Action do not identify to what extent, if any, the July 1, 2013 letter was a proper demand under Section 33–946(a). Therefore, the Ninth Cause of Action is being dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss (Doc. No. 20) is hereby GRANTED. The First, Second, Third, Fourth, Fifth, Sixth, Seventh and the derivative claims in the Fourteenth and Sixteenth Causes of Action are dismissed for lack of standing; the Eighth Cause of Action is dismissed because it is barred by collateral estoppel; the Tenth, Twelfth and the individual claim in the Sixteenth Causes of Action are dismissed because they are barred by res judicata; the Eleventh Cause of Action is dismissed because the court abstains from exercising its jurisdiction over this claim; and the Thirteenth, Fifteenth, and the individual claim in the Fourteenth Causes of Action are dismissed for failure to state a claim. The Ninth Cause of Action is dismissed without prejudice and any motion for leave to amend the complaint with regard to that cause of action must be filed within 21 days.

It is so ordered.

---